ARNOLD v. SCHOOL DISTRICT, *Appellant.*

**Schools**: MISCONDUCT OF TEACHER: REMEDY AGAINST HIM. Under the present law the board of directors of a public school district have no power to discharge a teacher for cruel treatment and profane and abusive language used toward pupils. The law gives the county school commissioner power to revoke his certificate for " incompetency or immorality proven," and when this is done he is disqualified from further teaching in the public schools of that county. Such treatment and language used toward pupils fall within the definition of " incompetency or immorality;" and the remedy is through action by the commissioner. HOUGH, C. J., and HENRY. J., dissented.

*Appeal from Boone Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

AFFIRMED.

*S. Turner* for appellant, cited *Puterbaugh v. Township Board,* 53 Mo. 472; *McCutchen v. Windsor,* 55 Mo. 149; *Fitzgerald v. Hayward,* 50 Mo. 516; *State v. Foerstel,* 2 Mo.· App. 497.

*S. G. Douglass* for respondent, cited 1 Dillon Munic. Corp., p. 96, § 10 a; *Morley v. Power,* 5 Lea (Tenn.) 691; *s. c.,* 12 Cent. L. J. 540; *McCutchen v. Windsor,* 55 Mo. 151; *Pittman v. Adams,* 44 Mo. 586; *Geter v. Commissioners,* 1 Bay 354; *Singleton v. Commissioners,* 2 Bay 105.

MARTIN, C.—This action was commenced on the 21st day of July, 1879, for the purpose of recovering wages as a teacher. It is alleged in the petition that plaintiff entered into a written contract with the directors of defendant, by the terms whereof he was to teach the school of said district for the period of four months, beginning on the 9th day of September, 1878, and was to receive therefor a salary of $40 per month; that he entered upon the discharge of his duty under the contract, and taught said school for about seven weeks and two days, until about the 30th day of October, 1878, when the directors of defendant locked up the school house and prevented the further discharge of his contract; that he had repeatedly tendered his services under said contract and had held himself in readiness to comply with his part of the same, but that defendant refused to accept his further services or to pay him for the time of his employment, wherefore he asked for a judgment in the sum of $120, the amount of the residue coming to him under said contract. There is another count for extra services as janitor, for preparing fires and cleaning

the school house, for which he asked a judgment in the sum of $10.

The answer of defendant admits the hiring and the time of actual service as alleged, and pleads a tender of $34, being the residue owing to plaintiff for the time of his actual service. The answer then concludes with the following special defense: That at the time of making the contract with respondent, it was distinctly understood and agreed that respondent should, in the government of the scholars, observe the written rules theretofore in force in the school, which rules were talked over and explained to the respondent; that among other things said rules prescribed that the teacher should subject no pupil to corporal punishment, until the directors should be consulted and their assent obtained, and that the teacher should be patient and kind to the pupils; that respondent, in September and October of said year, in managing and conducting the school, repeatedly disregarded and broke said rules, by the infliction of corporal punishment upon his pupils without consulting the directory; that respondent, during said months, gave way to violent outbursts of temper and cursed and abused his pupils, and beat and abused them in a cruel and brutal manner after he had been warned not to do so by the directors; that finally, after due notice to respondent, the directors dismissed respondent as teacher on or about the 30th day of October, as they averred it was their right and duty to do, and about the day stated (30th October) the directors locked up their school house and refused to accept his further services as teacher. The answer again tendered respondent the warrant aforesaid, for $34.

At the November term, 1879, of the circuit court, when the cause was called for trial, the respondent withdrew his reply to the answer, and filed his demurrer to "so much of defendant's answer as sets up plaintiff's cruel and abusive treatment of the scholars in his school, for the reason that the same contains no defense to this action," which demurrer was sustained by the court, and appellant excepted

Thereupon the trial was proceeded with as to the issues embraced in the answer not reached or covered by the demurrer.

The plaintiff gave evidence tending to prove that he tendered his services and his monthly reports during the whole term of his contract; that he obtained no other engagement and was not fit for other business; that the directors failed to have the house swept or fires made as they had agreed to, and that he had attended to such duties, and had expended fifty cents for fuel, and that his services as janitor were worth $10.

On the part of defendant the evidence tended to prove that a copy of the rules was given to plaintiff when he signed the printed contract of hiring. The rules were then offered and excluded. It further appears from defendant's testimony that about the 20th day of October, 1878, complaints were made to the directors about the treatment of the scholars by plaintiff; that about the 25th day of October, 1878, they met and investigated the charges, and requested plaintiff to quit teaching, which he refused to do; that thereupon they locked up the school house on the 30th day of October, 1878, and gave plaintiff a written notice of his discharge as teacher. It also appears that the directors offered to prove that the plaintiff, in the school house and during school hours, had knocked down a scholar by the name of Jones with a billet of stove wood, and had stamped on another by the name of Peyton, and had indulged in a multitude of profane and objurgatory expressions while conducting these physical exercises. This evidence was excluded. Thereupon the jury found a verdict for the plaintiff in the sum of $120.50.

The single question presented in the case is, whether the directors had the lawful right to terminate the plaintiff's contract of employment and discharge him from his position in the school as a teacher. A brief review of the school law bearing on this question may assist us in giving to it a proper answer.

The 6th section of the school law in the statutes of 1865 gave the local school directors the power to employ teachers and the qualified power to dismiss them. Gen. St. 1865, p. 258, § 6. It read as follows: "It shall be the duty of the school directors in each sub-district to manage and control its local interests and affairs; to employ teachers; to certify the amount due them for services to the township clerk, who shall draw an order on the county treasurer as hereinafter provided; and to dismiss any teacher at any time for such reasons as they may deem sufficient; provided such dismissal shall receive the sanction of the township board." It will be observed that to render a dismissal valid, it had to receive the sanction of the township board of education. This board could also discharge the duties of the local directors when they failed or refused to do so. Gen. St. 1865, p. 260, § 12.

Subsequent to this, the school law underwent a revision which appears in Wagner's Statutes of 1870. The power of the directors to dismiss teachers seems to have been left out of this revision. The 7th section reads as follows: "It shall be the duty of the directors in each sub-district to manage and control its local interests and affairs. They shall have the power to contract with and hire legally qualified teachers, for and in the name of the sub-district, which contract shall be in writing, and shall specify the number of months the school shall be taught and the amount of wages per month. Such contract shall be filed with the clerk of the sub-district, and a copy thereof shall be filed with the township clerk." 2 Wag. Stat., p. 1243, § 7.

The law of 1870, for the first time created a county superintendent whose duty it was, among other things, to examine teachers and give certificates of qualification, which should be for a period of not less than six months nor more than two years. The directors could employ no one who did not hold a certificate of qualification from the county superintendent. 2 Wag. Stat., p. 1252, § 47; p.

1253, §§ 51, 53, 54. While the superintendent was empowered under this law to issue certificates, and was required to keep a registry of all his issues, he seems to have been without the power to revoke or annul any of them. It thus appears that the express authority to dismiss or discharge teachers was left out of the school law of 1870. While the law was in this condition Judge Wagner, in *McCutchen v. Windsor*, 55 Mo. 151, in construing the 7th section above recited, said: "The only power delegated to the directors in this section is to employ legally qualified teachers. They must see that he is legally qualified and then they may hire him by making a contract in writing; and so far as any direct provision in the statute is concerned, here their authority ends. If any power of dismissal exists, it is to be deduced by implication only." He thinks that cases might occur which would justify the directors in removing the teacher. It must be admitted that the school law as revised in 1870 was palpably defective in leaving so important a power as the right of dismissal, to be inferred by implication, after it had been expressly given to them in the revision of 1865, subject to the sanction of the township board of education. The construction intimated by Judge Wagner rests upon the necessity of the case in the absence of any other method or remedy provided by the law to meet the possible abuses alluded to by him.

But in the revision of the school law of 1874, under which the dismissal in this case took place, the power to discharge teachers is practically lodged with the county commissioner, an officer who takes the place of the former county superintendent. This act of 1874 is embodied in the revision of 1879, and on this subject reads as follows: "It shall be the duty of said commissioner to examine all persons presenting themselves for that purpose, and if found qualified, to grant them certificates as teachers of public schools within said county. * * The certificate thus granted, to be of force only in the county for which it was granted, shall not be issued for a period of less than

twelve months nor longer than two years, to be graduated by the character of the examination the applicant sustains, and may be revoked for incompetency or immorality proven. A record of all certificates granted and revoked shall be kept by the commissioner." R. S. 1879, § 7083. The power of the directors is contained in section 7046, and reads as follows : " The board shall have the power to contract with and employ legally qualified teachers for and in the name of the district. The contract shall. be signed by the teacher and a majority of the directors; it shall specify the number of months the school is to be taught and the wages per month to be paid, and, with the certificate of qualification, shall be filed with the district clerk, who, at the expiration of the term, shall return said certificate to the teacher."

It will be seen from these provisions that the power of the directors to contract for a teacher is limited to one who is qualified by a certificate under the hand of the commissioner, which has to be filed with the clerk of the board of directors along with the contract, and must be returned to the teacher at the expiration of his term. The contract of the teacher under this school law is made with reference to the power of the commissioner to revoke it. When that power is exercised in accordance with the terms of the law defining it, the right of the teacher to pursue his vocation in the school where he happens to be or in any other school in the county is at an end. Any contract to teach which he may hold is necessarily terminated by such revocation in accordance with the conditions imposed upon it by the law when he entered into it; and he is in consequence of the revocation dismissed and discharged. He can neither teach nor sue for any further teaching in the county.

The acts for which the plaintiff in this case was dismissed by the directors, were such as fall within the definition of "incompetency or immorality," for which the commissioner is expressly authorized by law to revoke his certificate and terminate his office and contract as a teacher

Arnold v. School District.

under the school law. The directors are not possessed with this power. It has been expressly given to the commissioner and is no longer left to the directors by implication and necessity. If the acts of the plaintiff complained of to the directors were sufficient in their judgment to justify his dismissal, they should have reported them to the commissioner, so that his office and position in the school and county as a teacher might be terminated according to law. As no charges were brought against him before the commissioner, there is no occasion for us to consider how the commissioner should have proceeded upon being informed of them. The law seems to contemplate that the acts of " incompetency or immorality " for which he revokes the certificate, shall be in some way " proven."

I do not wish to be understood as implying that the directors, as the guardians of the "local interests and affairs" of the school, are not possessors of their customary, necessary and proper powers in that behalf. They have possession and control over the school property. They have the power, and it is their duty, to preserve it from damage and trespass. It is their duty also to see to the safety, health and comfort of the scholars attending the schools, and to protect them from assaults and outrages, whether coming from teachers or trespassers. Emergencies of this character may arise in which they would be justified in locking out both scholars and teachers. The incidental effect such necessary measures might have upon the teacher's contract when he sues for wages, is not germane to the issues in this case.

The directors did not assume to act under the pressure of any such emergency. They assumed by notice to terminate his relation to them as a teacher, and they locked him out because of that supposed termination. As the power to do this was vested elsewhere under the law of 1874, it only remains for us to affirm the judgment for the wages called for in his contract. Accordingly it is so ordered. PHILIPS, C., concurs; WINSLOW, C., absent.

For the reasons given in the foregoing opinion, NOR-TON, RAY and SHERWOOD, JJ., were of opinion that the judgment of the circuit court should be affirmed.

HOUGH, C. J., and HENRY, J., were of opinion that for the matters confessed by the demurrer, it was not only the right but the duty of the directors to dismiss and discharge the plaintiff. The contract was for personal services, and the acts charged constituted such a breach of that contract as warranted the directors in declaring the contract at an end, regardless of the right of the commissioner to revoke plaintiff's certificate.