Celia Ann WILLIAMS, Appellant,

v.

The SCHOOL DISTRICT OF SPRING-FIELD R–12, et al., Respondents.

No. 54040.

Supreme Court of Missouri, Division No. 2.

Oct. 13, 1969.

Motions for Rehearing or for Transfer to Court En Ban Denied Dec. 8, 1969.

William A. R. Dalton, Daniel, Clampett, Ellis, Rittershouse & Dalton, John D. Ashcroft, Springfield, for plaintiff-appellant.

C. Wallace Walter, Kenneth T. Walter, Mann, Walter, Burkart, Weathers & Schroff, Springfield, for respondents.

ELGIN T. FULLER, Special Judge.

This appeal is taken from an order of the trial court sustaining motions to dismiss plaintiff's (appellant herein) first amended petition and each of the five

counts thereof for failure to state a claim upon which relief could be granted to plaintiff.

Plaintiff, Celia Ann Williams, was a public school teacher in The School District of Springfield R–12, Springfield, Missouri. Her teacher's contract was for one year, beginning August 29, 1966, and terminating June 6, 1967, at an annual salary of $6,280.00. The defendants were The School District of Springfield R–12, the individual members of the Board of Education of said district and Willard J. Graff, the Superintendent of Schools of said school district.

Plaintiff received written notice April 13, 1967, from the Board of Education notifying her that she would not be re-employed for the school term 1967–1968. The action of defendants in not reemploying the plaintiff gave rise to plaintiff's cause of action. Since this case is before this court on the question of whether or not each or anyone of the five Counts of plaintiff's first amended petition stated a claim upon which relief could be granted, careful attention is given to each Count of the petition.

Count I is against the defendant members of the Board of Education only for breach of her teaching contract. It alleges that pursuant to the authority given school boards by Section 171.011 RSMo 1959, the School District of Springfield R–12 adopted rules and regulations which were set forth in a "Manual of Operations, Fourth Edition, 1964," marked Exhibit B and made a part of the petition. These rules and regulations are, by Paragraph 4 of the Teacher's Contract, specifically incorporated therein. The following provisions, appearing on page 122 of the Manual of Operations, are the basis of plaintiff's claim for breach of contract.

*"Dismissal Procedures*

A teacher's contract may be *terminated* or *suspended* by the administration for:

refusal to report for duty

inefficient and incompetent service

mental or physical disability which renders the teacher incapable of performing the terms of the contract immoral or licentious conduct.

Notice of *termination* of contract shall be in writing stating reason or reasons for *dismissal* prior to April 15th

A certificated person receiving a *dismissal* notice may, within five days, request in writing a hearing before the Board of Education. Requests should be directed to the President of the Board." (Emphasis ours.)

Count I then alleges that on the afternoon of April 12, 1967, plaintiff was orally advised by a representative of the school district that her teaching contract was being terminated and would not be renewed for the 1967–1968 school year, and was further advised that she could avoid embarrassment by resigning, but if she wished, she could appear before the Board of Education that evening; that she obtained counsel and she and her counsel did appear at 7:00 o'clock p.m. before the Board of Education in closed session and requested of the President of the Board (1) a written transcript of the proceedings; (2) specific reason or reasons in writing or otherwise for termination of plaintiff's contract; (3) a full, fair and timely hearing; (4) that the Board of Education postpone its decision on termination of plaintiff's contract (which termination had been recommended by the administration) until plaintiff and her attorney could be apprised of the accusations made by the administration against her, and an opportunity to refute them; that the Board of Education advised her that it would not be necessary to have any written memorandum of the meeting; that no obligation was owed to make any explanation to plaintiff; that no postponement would be made, and that the Board had only five minutes to consider the matter; that plaintiff advised the Board that she would hold herself ready to fulfill her contractual obli-

gations, but she was informed by defendant Superintendent Graff that her services would be terminated. She further alleges that the Board, in the regular meeting April 12, 1967, adopted a motion that, "In accordance with the recommendations of the administration, plaintiff Celia Ann Williams *be not reemployed* as a teacher in The School District of Springfield R–12 for the next school year, and that she be advised as directed by statute."

Plaintiff then pleaded that the School District, in violation of the terms of her contract, failed to notify plaintiff of the reason or reasons in writing or otherwise for termination, and failed to give plaintiff a full, fair and timely hearing before the Board, and that the failure to do these things constituted a breach of contract by the defendant School District; that because of such failure plaintiff was unable to secure other employment as a teacher and was thereby damaged; that plaintiff was eligible for one more year of employment as a teacher in said District before reaching the mandatory retirement age, and as a result of the breach of contract plaintiff would suffer monetary loss in the form of a decrease in retirement benefits and allowances. Plaintiff prayed that the Court enter its order compelling the members of the Board of Education to reinstate and re-employ plaintiff as a teacher, or, in the alternative, if that order could not be entered, that plaintiff be awarded damages in the sum of $14,000.00, and for her costs.

 Plaintiff's Count I speaks of *"termination"* of her contract. There was no termination of her contract. She was given a written notice April 13, 1967, that she would not be *re-employed*. Under Missouri law the school board must, before the 15th day of April of the year in which the contract then in force expires, notify each teacher in writing concerning his re-employment or lack thereof. Section 168.-111, V.A.M.S. Teachers' contracts are for one year and are annual contracts. School Boards have the right to offer or refuse to offer a contract to any teacher for the following year, and if written notice is given before April 15 of the year in which the contract then in force expires that such teacher will not be re-employed, the Board need not assign or give any reasons. Magenheim v. Board of Education, Mo.App., 347 S.W.2d 409. The Board has the right to decide whom they will employ or re-employ so long as the non-employment is not based on some impermissible constitutional ground, which will be considered in connection with Count II. Plaintiff concedes that Section 168.111 does not establish any kind of tenure and that she had no tenure under the Missouri law. In discussing Section 163.090, RSMo 1949, the predecessor to Section 168.111, the Court stated in Bergmann v. Board of Education of Normandy Consolidated School District, 360 Mo. 644, 230 S.W.2d 714, 720: "While the latter section provides for reemployment under specified circumstances, it expressly provides for the execution of a new, specific and distinct annual contract for each school year for which the teacher is employed. Notice under the statute that the teacher will not be re-employed for the succeeding year cannot, therefore, be construed as a *discharge* or *dismissal* from employment, since the only written contract of employment is in no wise affected by the notice." (Emphasis ours.)

Plaintiff does not allege that she was prevented from carrying out her teaching duties during the 1966–1967 school term or that she was not paid in accordance with her contract. There is no statutory or case law in Missouri requiring a written notice of a hearing, specific reasons for non-re-employment, or affording a teacher a full hearing before the School Board.

The remaining question is, therefore, did the contract of employment between plaintiff and defendant School District, incorporating the rules and regulations of the Board and containing the "Dismissal Procedures" set out above, apply to the non-re-employment of plaintiff and require that the Board give reasons for non-re-employment?

The *DISMISSAL PROCEDURES* provide: "A teacher's contract may be *terminated* or *suspended* by the Administration for: refusal to report for duty, inefficient and incompetent service, mental or physical disability which renders the teacher incapable of performing the terms of the contract, immoral or licentious conduct. Notice of *termination* of contract shall be made in writing stating reason or reasons for *dismissal* prior to April 15th. A certificated person receiving a *dismissal* notice may, within five days, request in writing a hearing before the Board of Education. Requests should be directed to the President of the Board."

If the requirements set out in the Dismissal Procedures apply to non-re-employment then the School Board would have deprived itself of its statutory power to not rehire a teacher solely by written notice without stating any reason. Section 168.-111 reads in part as follows: "3. Each school board having one or more teachers under contract shall notify each teacher in writing concerning his re-employment or lack thereof on or before the fifteenth day of April of the year in which the contract * * * expires."

Prior to 1870 school boards could dismiss a teacher at any time. However, the school laws were revised and the authority of school boards to dismiss teachers was dropped. This Court in the case of Arnold v. School District, 78 Mo. 226, ruled that the legislature, in dropping from the statutes the former authority to dismiss school teachers, meant to take away from school boards all authority, express or implied, to dismiss teachers. In 1889 the General Assembly of Missouri provided by statute: "The board shall have no power to *dismiss* a teacher; but should the teacher's certificate be revoked, said contract is thereby annulled. * * * Should the teacher fail or refuse to comply with the terms of the contract, or to execute the rules and regulations of the board, the board may *refuse to pay* said teacher—after due notice, in writing, is given by order of the board—

until compliance therewith is rendered. * * *" Laws of 1889, p. 224. (Emphasis ours.) Section 168.121 V.A.M.S. is similar and provides: "The board may not dismiss a teacher, except as provided in Section 170.011, RSMo; * * *. If the teacher fails or refuses to comply with the terms of the contract or to execute the rules and regulations of the board, the board *may refuse to pay the teacher,* after due notice in writing is given by order of the board, until compliance therewith is rendered."

Section 170.011, referred to in Section 161.121, above, provides that regular courses of instruction in the Constitution of the United States and of the State of Missouri and in American history and institutions shall be given in all public and private schools. Paragraph 4 thereof provides: "The willful neglect of any superintendent, principal or teacher, to observe and carry out the requirements of this section is sufficient cause for termination of his contract."

There is one other way by which a teacher's contract may be terminated and that is by mutual consent of the teacher and the board. Section 168.111, subd. 6.

Plaintiff contends that the section of the rules and regulations captioned "Dismissal Procedures" has reference to something other than dismissal procedures and that the dismissal procedures refer to non-re-employment or failure to rehire. She argues that since the dismissal procedures set out in the rules and regulations of the board apply to nonretention, she had a contractual right to receive written notice stating the reason or reasons for failure to rehire, and to have a hearing before the board.

The dismissal procedures have no application to non-re-employment. The section of the rules and regulations referred to concerns itself with *terminations, suspensions* and to a *dismissal notice* in the institution of a proceeding to revoke a teacher's teaching certificate under Section 168.-071; to procedures for withholding a

teacher's pay under Section 168.121, and to dismissal for willful neglect of a teacher to give instruction on the United States Constitution, the Constitution of Missouri, on American history and institutions, as provided by Section 170.011. Nothing is said in the "Dismissal Procedures" about re-employment or lack thereof. The provisions concerning employment and re-employment of teachers, or lack thereof, are contained in the section on "Contracts" of the Manual of Operations (pages 121 and 122) which precedes the section of "Dismissal Procedures." Paragraph 4 under "Contracts" reads: "Teachers under contract shall be notified in writing by the Board of Education of re-employment or lack thereof on or before the fifteenth day of April of the school year in which the contract then in force expires." While a school board has no power to decertify a teacher, it may *institute* a proceeding to revoke a teacher's certificate. The power to revoke a teacher's certificate is reserved to the State Board of Education.

The Dismissal Procedures do not apply to non-re-employment of teachers, and plaintiff was not entitled to a written statement of reasons why she was not going to be re-employed or to any hearing before the Board of Education. She had no statutory, contractual or independent right to a written statement of reasons and a hearing regarding the reasons for the failure of the Board to rehire her. Plaintiff's Count I does not state a cause of action for breach of a contract requiring the defendant Board of Education to give reasons for not rehiring plaintiff or to give plaintiff a hearing on whether she was to be rehired. Defendant's Motion To Dismiss Count I was properly sustained.

Count II alleges that the Board of Education *terminated* her employment or denied re-employment because of the exercise of her right of free speech. In substance, it alleges that in April, 1966, plaintiff gave a speech before a meeting of the Classical Association of the Middle West and South, Inc., held at the University of Oklahoma.

Later she was asked permission by a reporter of the staff of THE CLASSICAL JOURNAL, a scholarly publication of said association, to publish the speech under the title, "Anxieties and Joys of a Latin Teacher." The speech was published in the Classical Journal. Count II gives no details about that speech, except to say, "Said speech included an evaluation of the comparative emphasis placed on athletics as opposed to scholarly pursuits in the public schools." Plaintiff then pleads that the speech was given by plaintiff and published in pursuance of her constitutionally guaranteed right of free speech, but that defendant Willard J. Graff, the Superintendent, and "other administration officials" found the article *offensive*, and so advised plaintiff, and that such offense "resulted in the recommendation to the Board of Education by the 'administration' that plaintiff be *denied reemployment* for the school years 1967–1968;" that all defendants acted solely on the recommendation of the administration in refusing to employ plaintiff and that their action in so doing was arbitrary, capricious, and without constitutional authority, and in contravention of the constitutional right of plaintiff to exercise her right of free speech; that because of the arbitrary and capricious violation of plaintiff's constitutionally protected right of free speech, plaintiff's employment was terminated. Plaintiff prayed for an order of the Court compelling the members of the Board of Education to reinstate and re-employ her or, if that order could not be granted, plaintiff be awarded damages of $14,000.00 against the School District.

■ It is generally stated that a school board has the absolute right to decline to employ or re-employ any applicant or teacher for any reason whatever. 47 Am. Jur., Schools, Sec. 114. Among the powers usually reposed in such boards is included the power to enter into contracts with teachers and to fix their compensation. Their discretion is broad, and when such discretion is exercised in good faith and

not contrary to law, the courts are loath to interfere to aid anyone whom the board does not desire to employ. However, the basis for failure to re-employ must not be on impermissible constitutional grounds. Shelton v. Tucker, 364 U.S. 479, 482, 486, 81 S.Ct. 247, 249, 251, 5 L.Ed.2d 231 (a disclosure statute violative of the right of associational freedom and academic liberty, closely allied to freedom of speech); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir.) (where teachers had been discriminated against for their union membership in the American Federation of Teachers); Smith v. Board of Education of Morrilton School District No. 32, 365 F.2d 770 (8th Cir.) (racial discrimination); Johnson v. Branch, 364 F.2d 177 (4th Cir.), cert. denied, 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed. 2d 542 (racial discrimination).

In Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, a public school teacher in Illinois sent a letter to a local newspaper basically making an attack on the school board's handling of the 1961 bond issue proposals and its subsequent allocation of financial resources between the school's educational and athletic programs. It also charged the Superintendent of Schools with attempting to prevent teachers in the district from criticizing the proposed bond issue. Pickering, the teacher, was dismissed from his position by the Board of Education. After the Illinois Supreme Court affirmed the dismissal the United States Supreme Court reversed. Under Illinois law the Board was required to hold a hearing on the dismissal. Pickering's claim that his letter was protected by the First Amendment was rejected by the Illinois Supreme Court. The United States Supreme Court, 391 U. S., at page 574, 88 S.Ct., at page 1738, 20 L.Ed.2d, at page 821, concludes its opinion as follows: "In sum, we hold that, in a case such as this, absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment * * * his dismissal

for writing it cannot be upheld and the judgment of the Illinois Supreme Court must, accordingly, be reversed and the case remanded for further proceedings not inconsistent with this opinion."

In Shelton v. Tucker, supra, the United States Supreme Court held that the Arkansas statute compelling every teacher, as a condition of employment, to file annually an affidavit listing every organization to which he has belonged within the preceding five years violated the due process clause of the Fourteenth Amendment and impaired the teachers' right of free association, saying at page 485 of 364 U.S., at page 251 of 81 S.Ct., at page 236 of 5 L. Ed.2d: "It is not disputed that to compel a teacher to disclose his every associational tie is to impair that teacher's right of free association, a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society * * *. Such interference with personal freedom is conspicuously accented when the teacher serves at the absolute will of those to whom the disclosure must be made—those who any year can terminate the teacher's employment without bringing charges, without notice, without a hearing, without affording an opportunity to explain. * * * The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools. 'By limiting the power of the States to interfere with freedom of speech and freedom of inquiry and freedom of association, the Fourteenth Amendment protects all persons, no matter what their calling. But, in view of the nature of the teacher's relation to the effective exercise of the rights which are safeguarded by the Bill of Rights and by the Fourteenth Amendment, inhibition of freedom of thought, and of action upon thought, in the case of teachers brings the safeguards of those amendments vividly into operation. Such unwarranted inhibition upon the free spirit of teachers * * * has an unmistakable tendency to chill that free play of the spirit which all teachers ought especially to cultivate and practice; it

makes for caution and timidity in their associations by potential teachers.' Wieman v. Updegraff, 344 U.S. 183, 195, 73 S.Ct. 215, 221, 97 L.Ed. 216 [224] (concurring opinion). '* * * Teachers and students must always remain free to inquire, to study and to evaluate * * *.'" Teachers in Arkansas, as in Missouri, are hired on a year-to-year basis and have no job security beyond the end of each school year. The Shelton case is a non-re-employment case in a non-tenure State and yet the United States Supreme Court makes it plain that a school board may not refuse to *rehire* because of some constitutionally objectionable reason.

The effect of Pickering v. Board of Education, supra, is illustrated in Watts v. Seward School Board, 391 U.S. 592, 88 S. Ct. 1753, 20 L.Ed.2d 842. The Watts case had previously been considered by the Supreme Court of Alaska on three occasions, 395 P.2d 372; 421 P.2d 586, and 423 P.2d 678. The statutes of Alaska provided that teachers whose contracts were not to be renewed for the following year should be notified in writing on or before March 15 with a clear statement of cause including a bill of particulars. S.L.A.1957, Chapter 71, Section 1. The Seward School District refused to renew the teaching contracts of teachers Watts and Blue for 1959–60 on the ground that said two teachers had engaged in immoral conduct within the statutory definition of that term. The Alaska Supreme Court noted that "(t)he immoral conduct complained of as to the appellant Watts was his holding of private conversations with various teachers in which he solicited their support in an attempt to oust the school superintendent from his job. The allegedly immoral conduct of the appellant Blue was his making of a speech to a labor union at Seward in which he stated, 'We have been unable to get rid of the [school] Superintendent, so we are going to get rid of the Board,' or words to that effect." The Alaska Supreme Court held that this conduct " * * * had a tendency to bring the * * * teaching profession into public disgrace or disrespect * * *",

within the meaning of the statute. 395 P. 2d at 375, and it sustained the teachers' dismissal. The United States Supreme Court in a Per Curiam order, 381 U.S. 126, 127, 85 S.Ct. 1321, 14 L.Ed.2d 261, 262, states: "Petitioners contend that their dismissals for engaging in the conduct here described unconstitutionally infringe their rights to political expression guaranteed by the First and Fourteenth Amendments to the United States Constitution. We need not consider petitioners' contentions at this time, for since their petition for certiorari was filed Alaska has amended its statutes in this area. House Bill 27, * * * now defines 'immorality' as grounds for revocation of a teaching certificate, as 'the commission of an act which, under the laws of the state, constitutes a crime involving moral turpitude.' Moreover, Alaska Statutes, Tit. 14, c. 20, have been amended by the addition of a new section which reads: 'Sec. 14.20.095. Right to Comment and Criticize Not to be Restricted. No rule or regulation of the commissioner of education, a local school board, or local school administrator may restrict or modify the right of a teacher to engage in comment and criticism outside school hours, relative to school administrators, members of the governing body of any school or school district, any other public official, or any school employee, to the same extent that any private individual may exercise the right.' "

The Supreme Court of the United States, because of the supervening changes in the statutes of Alaska, remanded the case to the Alaska Court for further consideration deemed appropriate by the Alaska Supreme Court under the amended Alaska law. The Alaska Court again affirmed the non-retention of the teachers. Again the Supreme Court of the United States vacated the Alaska Supreme Court judgment and in a Per Curiam opinion, 391 U.S. 592, 88 S.Ct. 1753, 20 L.Ed.2d 842 (1968) stated: "The judgment * * * is vacated and the case is remanded to the Supreme Court of Alaska for further consideration in light of Pickering v. Board of

Education of Township High School District 205, Will County, Illinois, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811."

In Freeman v. Gould Special School District of Lincoln County, Arkansas, decided by the United States Court of Appeals, 8th Circuit, January 15, 1969, 405 F.2d 1153, it was held that plaintiff negro teachers who failed to show any racial discrimination were not entitled to relief under civil rights statutes, and that, under Arkansas law giving school boards absolute right not to rehire teachers, disagreement between teachers and principal who recommended that they not be rehired was an internal matter to be handled by the school board and did not present any federal due process issue. The case recognizes that *a school board may not refuse to employ a teacher for some impermissible constitutional reason, such as race, religion, or the assertion of rights guaranteed by law or the Constitution.* The court at page 1158 stated: "In Arkansas the board's right not to rehire a teacher in the school district appears to be absolute, *except that the decision must not rest on grounds that are violative of constitutional or legal rights."* (Emphasis ours.)

■ Appellant, Celia Ann Williams, alleges in her second Count that she was denied re-employment by the defendant school district because she had published an article in a scholarly journal criticizing the emphasis on athletics in the Springfield Public School system in violation of her constitutionally protected right of free speech. Count II states a claim upon which relief could be granted. Recognition of a "pleaded" cause of action in this case in no way changes the broad powers of a school board's right not to re-employ; nor are we saying that grounds for non-retention of a teacher have to be set out in the notice to a teacher; nor is a teacher entitled to a hearing upon receiving the notice of non-re-employment; nor do we mean to weaken or change the non-tenure status of teachers. We are saying, however, that a school board's right not to rehire a teacher must not be on grounds that are violative of a teacher's constitutional right. When a teacher challenges the board's discretion on the ground that her non-retention as a teacher was in violation of her constitutional right of free speech, the burden of proof remains on the teacher to prove such impermissible ground. The Court erred in dismissing Count II.

■ Count III seeks to state a claim against defendant Graff, Superintendent of of the district, for alleged malfeasance in the performance of certain "ministerial duties"—such as, attempting to *terminate* plaintiff's contract of employment, in refusing to substantiate the vague, oral and unsubstantial charges of misconduct, in arbitrarily refusing to relate specific charges or instances of misconduct, in causing the Board of Education to make a hasty and improvident decision to *terminate* plaintiff's contract, in causing the Board of Education to not grant plaintiff a full hearing, in refusing to afford plaintiff a postponement of Board action on the administration's recommendation of termination, in causing plaintiff to be notified of termination of her contract while plaintiff was in a physician's office under sedation, and in failing to afford plaintiff her contractual rights under her contract of employment, all of which performance amounted to negligent, wanton, reckless and malicious malfeasance and unlawful performance of his ministerial duties, resulting in physical injury and emotional upset necessitating payment of expenses for drugs and medical treatment. The prayer was for $5,000.00 actual damages and $1,000.00 punitive damages.

The trial court sustained defendant Graff's Motion to Dismiss Count III. We agree with the action of the trial court.

■ In order to be liable for misfeasance or malfeasance in the performance of a ministerial duty the superintendent must have a duty to do something in regard to the plaintiff. Smith v. Consolidated School District No. 2, Mo., 408 S.W.2d 50.

It naturally follows that a duty could not exist if there was no power or authority to do something. Luce v. Board of Education of Village of Johnson City, 2 A.D.2d 502, 157 N.Y.S.2d 123. Since we have held with respect to Count I that there was no duty on the part of the Board of Education to have assigned any reason or reasons for failing to re-employ appellant, there was, of course, no duty on the part of Superintendent Graff to "substantiate the charges of misconduct or to relate specific charges or instances of misconduct." He could not have caused the board to make a hasty and improvident decision to *terminate* plaintiff's contract because, as we have said, the board did not *terminate* her contract. There was no duty to grant appellant a hearing before the board on account of her non-re-employment, either under the laws of Missouri or under her contract of employment, as we have held in connection with Count I, and therefore, there could not be any ground for the charge of misfeasance or malfeasance on the part of Superintendent Graff in "causing the Board of Education to not grant plaintiff a full, fair and timely hearing," or "in refusing to afford plaintiff postponement of Board action on the administration's recommendation of termination until plaintiff had an opportunity to refute any accusations." The superintendent has no power or authority to refuse to afford a postponement of Board action because he was not a member of the Board. The action taken at the Board meeting was on motion of a director which recited that "Celia Ann Williams be not *re-employed* as a teacher in The School District of Springfield R–12 for the next school year, and that she be advised as directed by statute." Appellant was not notified of *"termination* of her contract and employment" on April 13, 1967, since the only notice of that date was the statutory notice which referred to non-re-employment. The superintendent could not have failed to "afford plaintiff her contractual rights under her contract of employment," inasmuch as such rights are not within his power or au-

thority. A teacher's contract can only be made with a school district as authorized by the Board of Education. Section 168.-111, RSMo 1959. Further, plaintiff had no contract rights except under the 1966–1967 contract, which gave plaintiff no right of specifications of charges or the right of a hearing.

The allegations that Respondent Graff's exercise of the ministerial duties was done in a "wanton, reckless and malicious" manner are mere conclusions not substantiated by any facts pleaded by appellant and therefore not admitted by the Motion to Dismiss. Pretsky v. Southwestern Bell Telephone Co., Mo.Sup., 396 S. W.2d 566, 569.

This Count seeks recovery for emotional disturbances and physical injury aggravated thereby and resulting therefrom. To sustain recovery for emotional distress and bodily harm resulting therefrom, plaintiff must suffer a traumatic physical injury through the fault of defendant, unless there is extreme and outrageous conduct on the part of the defendant intentionally or recklessly causing the emotional distress. Nelson v. Grice, Mo.Sup., 411 S.W.2d 117; Pretsky v. Southwestern Bell Telephone Co., supra; Restatement of the Law of Torts, Second, 1965, Vol. 1, Section 46; 28 A.L.R.2d 1070. Appellant has not alleged any traumatic physical injury, nor has she alleged any extreme and outrageous conduct of the nature required for recovery under Missouri law. The facts pleaded do not constitute what could be considered to be extreme and outrageous conduct; nor was there any allegation of a "special relation between the parties" which would allow recovery for insults not amounting to extreme outrage, which law we recognized in Pretsky, supra. Appellant and Superintendent Graff, as fellow employees of the School District, do not have such a special relationship with one another. Such relationship is not at all similar to the relationships mentioned in Section 48 of the Restatement of Torts, Second, 1965, Vol. 1, providing generally

for "Special Liability of Public Utility for Insults by Servants."

Appellant further alleged that the superintendent was liable "in causing plaintiff to be notified of termination of her contract (notice of non-re-employment) on April 13, 1967, while plaintiff was in her treating physician's office and under sedation." There is no allegation that the superintendent knew or had reason to know that plaintiff was then in a doctor's office or that he knew that plaintiff was under sedation or that he intentionally or recklessly caused her emotional distress. Section 46 of the Restatement of the Law of Torts, supra, states: "46. Outrageous Conduct Causing Severe Emotional Distress. (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. * * * d. * * * Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

The action of the trial court in sustaining defendant's Motion to Dismiss Count III is affirmed.

 Count IV is for slander. It alleges that Superintendent Graff did, on April 12, 1967, in the presence of many persons, wilfully, wantonly and maliciously speak and cause to be spoken and published false, defamatory and slanderous words concerning plaintiff, to-wit: "that plaintiff had disobeyed school rules and regulations; that plaintiff was insubordinate, and that plaintiff was insufficient and inadequate with her students." The petition does not set out the occasion or circumstances surrounding the utterance of the alleged slan-

der. The *occasion* determines whether a publication of slander is privileged and whether the slander is, under the circumstances, absolutely or conditionally or qualifiedly privileged. The circumstances are the occasion upon which the language is used and it is the occasion which is privileged. Laun v. Union Electric Co., 350 Mo. 572, 166 S.W.2d 1065, 144 A.L.R. 622. Plaintiff alleges that the superintendent wilfully, wantonly and maliciously spoke such words. Such malice would destroy a conditional or qualified privilege. However, if the defendant, under the circumstances and the occasion for the utterance, had an *absolute* privilege, then he was absolutely immune from responsibility, regardless of his purpose or motive or malice.

 Plaintiff complains of the trial court's looking beyond the allegations of the petition and in looking at evidence outside the face of the petition in ruling on defendant's Motion to Dismiss. Plaintiff's answers to the defendant's request for admissions were considered by the court in ruling on defendant's Motion to Dismiss said count for slander. It is true that a motion to dismiss admits the truth of all facts well pleaded and inferences fairly deducible therefrom. However, the admissions of plaintiff admitted that the slanderous statements were made in a session of the Board of Education after plaintiff requested reasons for her non-re-employment (called *termination* by the plaintiff). She also named those persons who were present, including the plaintiff, her attorney and two of plaintiff's friends. She also admitted that her attorney stated to the Springfield Daily News newspaper that although plaintiff had requested of the Board of Education specific reasons for termination of employment, she was advised by defendant Willard J. Graff that her employment status was being terminated because she "was insufficient and inadequate with her students, insubordinate, and has disobeyed school rules and regulations." While an answer to a request for admissions may not properly be regarded

as a pleading, such admissions are analogous to a pleading, "The effect of admissions made in response to a request is comparable to a legal admission made in the pleadings of a party, and it is not necessary that they be formally introduced in evidence at the trial." 27 C.J.S. Discovery, § 106, p. 284. In slander cases it is essential to state the circumstances and the occasion for defendant speaking such slanderous words. The answers to the request for admissions supplied the circumstances and occasion. That is, that the words were spoken at a Board of Education session; they were spoken in answer to plaintiff's *request* for the reasons for her non-re-employment the following school year; and they were spoken before the third persons named in plaintiff's answers to the request for admissions. If those answers, together with the allegations of the count for slander, should show that plaintiff had no cause of action for slander, it would be proper to dismiss the suit for slander without a useless and unnecessary trial on such issue.

 Plaintiff pleads no special damages, and that is not necessary where the words are actionable per se. The words, "that plaintiff had disobeyed school rules and regulations; that plaintiff was insubordinate, and that plaintiff was insufficient and inadequate with her students" were slanderous per se, for they tend to injure plaintiff in her vocation or profession as a teacher. And that is one of the kinds of slander which are actionable without proof of damage. Prosser on Torts—2nd Ed., Section 93, p. 584; Bray v. Callihan, 155 Mo. 43, 55 S.W. 865; Clark v. McBaine, 299 Mo. 77, 252 S.W. 428, 433.

 The real question here involves the question of absolute and qualified or conditional privilege in defendant's speaking the above words. If the privilege were only a qualified one the Court could not dismiss plaintiff's count for slander for the reason that plaintiff alleges that the words were spoken maliciously. A conditional privilege is conditioned upon good motives

and reasonable behavior and is forfeited if it is abused. On the other hand, malice does not destroy an *absolute* privilege. If the petition and admissions show that the words were absolutely privileged then the allegation that the words were spoken maliciously would not affect the superintendent's absolute immunity from responsibility. We quote from Restatement of Torts, Ch. 25, Section 583, p. 220 et seq., as follows: "General Principle. Except as stated in § 584, the publication of false and defamatory matter of another is *absolutely* privileged if the other *consents* thereto * * * The privilege conferred by the consent of the person about whom the defamatory matter is published is absolute. The protection given by it is complete and it is not affected by the ill will or personal hostility of the publisher or by any improper purpose for which he may make the publication, unless the consent is to its publication for a particular purpose in which case the publication for any other purpose is not within the scope of the consent." (Emphasis ours.)

Following the above section, the Restatement gives this illustration 2. (p. 222).: "A, a school teacher, is summarily discharged by the school board. He demands that the reason for his dismissal be made public. B, president of the Board, publishes the reason. A has consented to the publication though it turns out to be defamatory".

In 33 Am.Jur., Libel & Slander, Sec. 93, pp. 105–106, it is said: "It is generally held that the publication, of a libel or slander, *invited* or *procured* by the plaintiff, or by a person acting for him in the matter, is not sufficient to support an action for defamation. Thus, the delivery of a letter of recommendation for a former employee to a person who, by his authority, requested it is not a publishing of any libel contained in it. Again, there is no publication where communications, concerning the cause of discharge, are made by an employer or his agent to one procured by a discharged employee to intercede for his reinstatement". (Emphasis ours.)

In Hellesen v. Knaus Truck Lines, Mo., 370 S.W.2d 341, this court affirmed the action of the trial court in sustaining defendant's motion to dismiss a libel suit. In that case plaintiff's union contract provided for sending a copy of a warning letter to plaintiff's union before discharging an employee. We held that, through the Union Contract, plaintiff *consented* to the sending of the letter to the local union and that under such circumstances the allegedly defamatory statements in the letter were fully privileged. Absolute privilege is confined to relatively few situations. It is accorded to judicial proceedings, legislative proceedings, proceedings of executive officers charged with responsibility of importance, publications made *with the consent of the plaintiff* and communications between husband and wife. Law of Torts— Prosser, 2nd Ed., Sec. 95; Walker v. D'Alesandro, 212 Md. 163, 129 A.2d 148, 64 A.L.R.2d 231. One who has invited or instigated the publication of defamatory words can not be heard to complain of the resulting damage to his reputation. "The general social policy of denying recovery for conduct to which the plaintiff has given his consent finds expression in an absolute immunity in cases where consent is given to defamation". Prosser, supra, § 95(4), p. 613.

In 53 C.J.S. Libel & Slander, § 95, p. 151, it is said: "When no previous publication has been made, the publication is, as a general rule, privileged if the fact appears that the particular publication under consideration was *procured* or *invited* by plaintiff or his authorized agent, and if the answer of defendant does not go beyond plaintiff's question; * * *". (Emphasis ours.)

Appellant contends that defendant superintendent abused the privilege and went beyond the inquiry made by plaintiff. As we have said, a *qualified* privilege is lost if the publication is made maliciously or in the wrong state of mind. But that is not true of an *absolute* privilege. In cases of absolute privilege the utterer is absolutely immune from responsibility without regard to his purpose or motive, the reasonableness of his conduct, or malice. Since we have decided that defendant had an absolute privilege the contention of plaintiff that he abused the privilege is not applicable. When plaintiff asked the defendant at the board meeting why she was not going to be re-employed the following school year the superintendent should be at liberty to say to her, "Miss Williams, you have disobeyed school rules and regulations, you are insubordinate and are insufficient and inadequate with your students." In that situation he is absolutely protected in his explanation to plaintiff.

We affirm the trial court's action in dismissing Count IV.

Count V alleges that plaintiff was denied her right of due process by the defendant school district in that no procedural due process was afforded to her prior to or after "termination" of her employment, she being entitled to a full and fair hearing, including (a) a written statement of the charges, (b) a hearing before the board, (c) the right to inspect in advance any evidence which the administration intended to submit at the hearing, (d) the right to counsel at the hearing, (e) the right of plaintiff to submit evidence, (f) the right to hear the evidence against her and to cross-examine witnesses giving evidence against her, (g) the Board to determine the facts solely on the evidence presented at the hearing and to state in writing its finding as to whether or not plaintiff was guilty as charged and (h) the right of plaintiff at her own expense to make a record of the events at the hearing. These are essentially the same rights claimed by plaintiff in Count I. Here it is claimed that plaintiff is entitled to a statement of the "charges" and a hearing thereon, and that without such a hearing plaintiff's right of due process is denied. We have said in Count I that plaintiff was not entitled to specific reasons, or any reasons at all for her non-re-employment. She had no statu-

tory or contractual right to this. Her teaching contract was for one year, 1966–1967. That was the only contract she had. It did not give her the rights she claims in Count V. In Parker v. Board of Education of Prince George's County, Md., 237 F.Supp. 222, loc. cit. 228, affirmed 348 F.2d 464 (4th Cir.), cert. den. 382 U.S. 1030, 86 S.Ct. 653, 15 L.Ed.2d 543, it was stated: "Generally, in the absence of statute or unreasonable discrimination, a public employee may be summarily discharged from government service, without the necessity of a hearing, and such action does not amount to a denial of due process of law. Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692."

In Nelson v. County of Los Angeles, 362 U.S. 1, 80 S.Ct. 527, 4 L.Ed.2d 494, the Court upheld the discharge of both permanent and probationary county employees. In affirming the discharge of the temporary employee, who was entitled to no hearing under the state law, the court found that his discharge did not violate the due process clause. Justice Brennan, in a dissenting opinion, stated at page 16, 362 U.S., at page 535, 80 S.Ct., at page 504, 4 L.Ed. 2d: "Doubtless a probationary employee can constitutionally be discharged without specification of reasons at all; and this Court has not held that it would offend the Due Process Clause, without more, for a State to put its entire civil service on such a basis * * *."

Since there is no statutory requirement for or contractual right to a hearing and the other procedures to which plaintiff refers, there is no constitutional basis for her contention that the members of the Board of Education of The School District of Springfield R–12 deprived appellant of due process under Article XIV of Amendments to the Constitution of the United States or under Article I, Section 10 of the Constitution of Missouri. The action of the trial court in dismissing Count V is affirmed.

We affirm the order of the trial court dismissing Counts I, III, IV and V. We conclude that the trial court erred in dismissing Count II. As to Count II, the cause is reversed and remanded with directions to proceed only on Count II in accordance with the views herein expressed.

All of the Judges concur.