Raymond A. JOHNSON,
Plaintiff-Appellant,

v.

CITY OF BUCKNER, Missouri et al.,
Defendants-Respondents.

No. WD 31095.

Missouri Court of Appeals,
Western District.

Dec. 30, 1980.

Richard W. Noble, Steven D. Ruse, Shughart, Thomson & Kilroy, Kansas City, for plaintiff-appellant.

Don Hutson, Hutson, Schmidt & Hammett, Kansas City, for defendants-respondents.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Raymond Johnson filed suit in seven counts against the City of Buckner and its mayor and board of aldermen alleging violations of his procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution, a right to judicial review of his termination as a police officer and damages for defamation. The eighth count was a suit by Johnson's wife, Janet, but no appeal has been taken on that count.

After extensive discovery consisting of requests for admissions and depositions, Buckner and the individual defendants filed a motion for summary judgment which was granted as to all counts of the petition. On this appeal Johnson contends: (1) he was not an employee at will and, therefore, he was not terminable at will; (2) he had a liberty interest which was violated when he was terminated; (3) he was denied substantive due process in his termination; (4) he was entitled to judicial review of his discharge; (5) the counts in defamation raised issues of fact which need to be resolved; and (6) the allegations of actual malice raises issues of fact which are triable by a jury. Affirmed.

Johnson was a full-time police officer employed by Buckner for about a year when he was terminated by action of the mayor and board of aldermen. The action to terminate Johnson was taken at a closed meeting of the board without notice or hearing, and after the meeting Johnson was called to the meeting and informed that he had been terminated. When Johnson entered the meeting, he noted the presence of a stranger who was not a part of the board of aldermen. When informed that he had been terminated, Johnson asked the reasons and in response the mayor made the following statement:

"The counsel voted to dismiss Ray Johnson. All members of this board agree on this is based on his conduct and deportment, careless handling of city property, disregard of orders and his general attitude."

The person unknown to Johnson who was in the meeting at the time Johnson requested the mayor to give the reasons for his termination turned out to be a reporter for a newspaper of general circulation in the area, and the newspaper, on the next day, carried an account of the termination with the reasons as given by the mayor. No other publication by the City or its officers is alleged by Johnson other than the statement given by the mayor at the time Johnson requested the reasons for his termination.

About a week after the termination, Johnson made a request in writing for an appeal hearing before the board of aldermen concerning his termination. A short time later, the board conducted a hearing, and thereafter the board voted to ratify the termination. This suit followed. In Counts I through IV Johnson alleged violation of his procedural and substantive due process rights in his termination without notice and hearing prior to the termination; in Count V he sought judicial review of his termination; in Counts VI and VII he alleged defamation by the reasons given for his termination. The prayer generally was for reinstatement to his position and for actual and punitive damages.

■ Johnson first contends the court erred in granting summary judgment on Counts I through V on a finding that he was an employee at will because under certain city ordinances he could not be discharged for disciplinary reasons without procedural steps being taken which the City failed to follow. Johnson concedes the city ordinance provided that police officers hold their office at the will of the mayor and board of aldermen. Section 85.620, RSMo 1978,[1] provides that the police of cities of the fourth class, as is Buckner, may be appointed for such times as may be prescribed by ordinance. In *Cooper v. City of Creve Coeur*, 556 S.W.2d 717 (Mo.App.1977) the court held that under §§ 79.230 and 79.240 police officers of fourth class cities are employees at will and may be removed

1. All statutory references are to RSMo 1978, unless otherwise noted.

for no reason or any reason by the mayor with the consent of a majority of the board of aldermen. Johnson acknowledges the holding in *Cooper* is squarely against him, and does not dispute the action taken by Buckner was sufficient to discharge him under *Cooper*, but contends city ordinances providing for disciplinary actions against police officers were not complied with by the City and for that reason his termination was improper. In *Russell v. City of Raytown*, 544 S.W.2d 48, 51[4, 5] (Mo.App.1976) this court held that provisions of a personnel code in the city ordinances could not place a city employee beyond the power of the mayor and board of aldermen to remove pursuant to authority granted by statute. In this case, under the holding in *Cooper*, Johnson was an employee at will. Although the City could have given him a different status under § 85.620, it did not do so. As an employee at will he could be removed for any reason or no reason. Any city ordinance to the contrary is not effective to grant him any greater status than an employee at will. *Russell, supra.* The trial court was correct in holding that Johnson was an employee at will and granting summary judgment as against contentions he was entitled to notice and hearing because he was not an employee at will.

Johnson contends that even if it be held that he was an employee at will the court erred in granting summary judgment because there are material questions of fact to be resolved by his pleadings that his termination deprived him of a liberty interest under the Fourteenth Amendment. In this point Johnson contends that he was entitled to procedural due process because the reasons given for his termination were false and defamatory and this deprived him of his liberty. He contends he was entitled to notice and hearing prior to his termination to afford him an opportunity to contest the reasons for his termination.

In *Mazaleski v. Treusdell*, 562 F.2d 701 (D.C. Cir. 1977) a government employee was terminated for unsatisfactory performance and insubordination. The court stated at p. 712:

Subsequent lower court decisions have interpreted the guidelines articulated in *Roth* [*Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)] to require that an employee claiming an infringement of liberty show that the government's action was likely to either seriously harm his standing in the community or foreclose his future opportunities for reemployment.

The court observed that Mazaleski was not terminated for dishonesty, for having committed a serious felony, serious mental illness or for lack of intellectual ability as distinguished from his job performance. The court held the reasons assigned did not show an infringement of liberty. The court quoted with approval from *Russell v. Hodges*, 470 F.2d 212, 217[5, 6] (2d Cir. 1972) when the court referred to *Roth* and said:

[W]e believe the Court was thinking of something considerably graver than a charge of failure to perform a particular job, lying within the employee's power to correct; the cases cited as illustrations involved charges of chronic alcoholism or association with subversive organizations. Indeed, a general rule that informing an employee of job-related reasons for termination created a right to a hearing, in circumstances where there was no constitutional requirement for the state to do anything, would be self-defeating; the state would merely opt to give no reasons and the employee would lose the benefit of knowing what might profit him in the future.

In *Russell v. Hodges* the court was considering reasons for termination which included sleeping on duty, absence from his post without authorization and wearing improper attire. The court held these reasons did not infringe the liberty interest protected by the Fourteenth Amendment.

This court believes the rule stated in *Russell v. Hodges, supra*, is correct and that the court in *Roth* was thinking of something more than reasons for job termination related to a failure to perform and other performance deficiencies within the employee's power to correct. The reasons giv-

en in this case were wholly related to Johnson's job performance and were wholly within his province to correct. They do not charge him with any felony, serious crime, or dishonesty. For this reason the reasons did not infringe his liberty by seriously harming his standing in the community or foreclose his future opportunities for re-employment. Since the reasons for Johnson's termination did not constitute an infringement on his liberty, he was not entitled to procedural due process before his termination.

Johnson next contends his substantive due process rights were violated when he was terminated without notice and hearing. In *Buhr v. Buffalo Public School District No. 38*, 509 F.2d 1196, 1200[6, 7] (8th Cir. 1974) the court stated:

"The claim that a person is entitled to 'substantive due process' means * * * that state action which deprives him of life, liberty, or property must have a rational basis—that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.' "

In the above quotation the court was quoting from *Jeffries v. Turkey Run Consolidated School District*, 492 F.2d 1 (7th Cir. 1974). The court adopted the holding in *Jeffries* that a constitutional right to substantive due process is no greater than the right to procedural due process.

▇ The definition of substantive due process in *Buhr* requires that the state action deprive a person of life, liberty or property. It has already been held that the termination of Johnson did not deprive him of a liberty interest and Johnson concedes that he had no property interest in his employment. Certainly Johnson does not contend the City deprived him of his life, so it is apparent that Johnson does not bring himself within the definition of substantive due process. Further, this court agrees with *Buhr* and *Jeffries* that the right to substantive due process is no greater than the right to procedural due process. Since the statement of reasons given Johnson for his termination did not infringe his right to

liberty and no other constitutional right is claimed to have been violated, Johnson was not entitled to procedural or substantive due process in his termination.

▇ Johnson next contends he was entitled to judicial review of his termination under § 536.150 and its counterpart Rule 100.08. Johnson relies on *Van Kirk v. Board of Police Com'rs, Etc.*, 586 S.W.2d 350, 353[1] (Mo. banc 1979) when the court held that since Van Kirk was an employee at will the court's review of his termination was limited to a determination of whether or not his removal was in violation of or in retribution for Van Kirk's exercise of a constitutionally protected right. Johnson argues that the statement in *Van Kirk* holding the employee was entitled to judicial review to see if his termination was connected with his exercise of a constitutional right, grants to a police officer who is an employee at will a full judicial review of his termination. Johnson seriously misreads *Van Kirk* when he reaches such a broad conclusion. *Van Kirk* clearly states that the only review afforded an employee at will is to determine if the termination was connected with the employee's exercise of a constitutional right. In *Van Kirk* no such contention was made and the court found no abuse of the board's discretion in its right to fire him. In this case there is no contention, pleading or evidence indicating Johnson's termination was because of his exercise of any constitutional right. Johnson was not entitled to a full judicial review of his termination because the adequacy of the grounds for his discharge is not subject to judicial review since the City could discharge him for no reason or for any reason. *Cooper, supra*, at 172[5]. The limited review referred to in *Van Kirk* is only for the purpose of determining whether or not the termination is connected with the exercise of a constitutional right by the terminated employee. Here, there is no pleading or evidence that Johnson's termination was because of his exercise of a constitutional right. The court in this case could and did correctly make the determination on summary judgment that Johnson's

termination was not for any constitutionally impermissible reason.

■ Johnson contends the court erred in granting summary judgment on two counts founded on defamation because there are material issues of fact as to whether or not Johnson consented to the publication of the reasons for his termination. Johnson alleged the reasons for his termination were false and the publication of these reasons constituted defamation. Although Johnson argues there are issues of fact to be resolved, a review of the petition and depositions reveals actually there is no dispute as to the facts. Johnson stated in his deposition that when he entered the meeting he noticed a stranger present. In the presence of the stranger and the other persons present, all of whom are not identified in the record, Johnson asked the mayor the reasons for his termination. The mayor read the statement set out above giving the reasons for the termination. Johnson testified in his deposition there was no other publication of the reasons made by the mayor or the City except the one statement given in response to his request for the reasons.

On almost identical facts, the court in *Williams v. School District of Springfield R–12,* 447 S.W.2d 256 (Mo.1969) held that a statement made by the superintendent of schools in the presence of a number of people giving the reasons for the non-renewal of a teacher's contract was absolutely privileged. The court assumed the reasons given were false and defamatory, but held that under § 583 of the Restatement of Torts (now § 583, Restatement of Torts 2d) the teacher had consented to the publication of the reasons by the superintendent when she requested that he state such reasons in the presence of a number of people. The court held under § 583 that the privilege on that occasion was absolute. The court held that an absolute privilege is not destroyed by the presence of actual malice, but remains absolute even in the presence of actual malice.

In this case Johnson requested a statement of the reasons for his termination in the presence of a number of people, including a stranger, who he later learned was a newspaper reporter. Johnson did not ask for the board to convene in a closed session nor did he ask that anyone be excluded from the room, nor did he place any condition on the persons to whom the reasons could be disclosed. Rather, he asked for the reasons in the presence of those assembled with full knowledge that at least one person there was unknown to him. Under § 583 of the Restatement of Torts and the holding in *Williams* it must be concluded that Johnson consented to the publication by the mayor of the reasons for his termination to those present.

Johnson contends, however, that he did not consent to the publication of the reasons in the newspaper even if he did consent to the publication of the reasons in the presence of those assembled. *Comment d* of § 583 of the Restatement of Torts states:

> The extent of the privilege is determined by the terms of the consent. These again are to be determined by the language or acts by which it is manifested in the light of the surrounding circumstances. If the person to whom the consent is given reasonably interprets the language used or the acts done as a consent to the publication of the defamatory matter to any person, at any time, in any manner and for any purpose, the publication however made is privileged. On the other hand, a consent may be limited to a publication to a particular person or at a particular time or for a particular purpose.

■ Johnson concedes he placed no limitation on the publication as to the persons to whom it could be published or the manner of its publication. Because the publication by the mayor was absolutely privileged, the fact that it was published in the presence of a newspaper reporter who later quoted the reasons in his newspaper does not remove the privilege in the absence of any qualification placed on the publication by Johnson at the time he requested the statement of reasons. *Comment d* further provides that it is not necessary that Johnson know that the reasons he consented to

**412**

be published would be defamatory. It is enough that he had reason to know that the reasons might be defamatory. Johnson obviously did not know the reasons at the time he requested a statement of such reasons but he certainly should have anticipated that the reasons could well be defamatory in his opinion.

In *Massengale v. Lester*, 403 S.W.2d 701 (Ky.1966) the court held that re-publication in a newspaper of allegations in a pleading in a pending suit did not destroy the absolute privilege which the pleader enjoyed when he filed his pleading. If the absolute privilege is not destroyed by re-publication in a newspaper, the source of the privilege does not matter. In the circumstances here, when Johnson consented to the publication in the presence of a stranger without any limitation on the publication, the re-publication of the reasons in the newspaper did not destroy the absolute privilege enjoyed by the mayor.

■ Johnson's final point contends there are issues of fact to be resolved concerning the existence of actual malice and since malice is an element which need not be proven until trial, the determination of this factual issue is not appropriate in summary judgment. Johnson overlooks the fact that the publication here by his consent conferred an absolute privilege on the mayor and such privilege is not destroyed even by the existence of actual malice. *Williams, supra*, at 268[21, 22]. Thus, there is no issue of fact to be resolved concerning the existence of actual malice because such malice could not overcome the absolute privilege.

The judgment is affirmed.

All concur.