Gerald A. REVELLE, Plaintiff-Appellant,

v.

MEHLVILLE SCHOOL DISTRICT R–9, a Public Corporation, Defendant-Appellant.

Nos. 37617, 37618.

Missouri Court of Appeals, St. Louis District, Division Two.

Jan. 31, 1978.

William L. Davis, St. Louis, for plaintiff-appellant.

George J. Bude, Clayton, for defendant-appellant.

STEWART, Judge.

Plaintiff, a probationary school teacher, initiated this court tried action against defendant, public school district, for damages and for reinstatement after defendant did not offer him an employment contract for the succeeding year. The action is based upon an alleged breach of an employment contract. The trial court found that defendant had breached the employment contract and awarded plaintiff damages in the sum of $7,500.00. The court further found that plaintiff was not entitled to reinstatement with back pay. Plaintiff has appealed from that part of the judgment denying reinstatement. Defendant has appealed

from that part of the judgment awarding damages to plaintiff. We affirm that portion of the judgment denying reinstatement and reverse that portion of the judgment awarding damages.

In the spring of 1973, plaintiff was completing his last year as a probationary teacher [1] with defendant. He was assigned the position of guidance counselor at Mehlville High School.

Plaintiff and defendant executed the Mehlville School District R–9 Probationary Teacher's Contract, which provided for employment of plaintiff commencing on August 30, 1972, and ending on June 8, 1973. The provisions of the Missouri Teacher Tenure Act, §§ 168.101 to 168.116, and the published Rules and Regulations of the Board of Education were made a part of the agreement, by reference.

On March 30, 1973, plaintiff was given an informal evaluation by his superiors. The persons present were C. E. Stratton, Principal, J. H. Woods, Assistant Principal, who was deceased at the time of trial, and S. A. Shannon, Director of Teacher Personnel. After a brief discussion, plaintiff was given a copy of his Teacher Evaluation Summary.

The conclusion of the evaluation stated that "[c]ompared to the rest of the counselors, Mr. Revelle is not doing the job, a situation which has apparently existed previous to this year. It is for this reason as well as others that a contract for the school year 1973–74 is not recommended."

The evaluation form contained a space where the teacher could indicate that he desired a formal review of the evaluation. Plaintiff requested a review and in another space added, "I believe that I have received an unfair evaluation. I request a formal review, due to the fact that the evaluation procedure, as stated in the district policy manual, was not followed." A review was

had with Mr. Shannon and Mr. Stratton on April 4, 1973.

The School Board, on the evening of April 4, 1973, voted not to renew plaintiff's contract for the 1973–1974 school year. Mr. Stratton, the Principal did not attend the Board meeting. On April 6, 1973, plaintiff received a letter from the Board of Education dated April 5, advising him that the Board would not hire him for the succeeding year. The letter gave no reason for the Board's decision.[2]

On May 16, 1973, plaintiff filed a Grievance Procedure Form, which is designated "Initiation of the Grievance Procedure." Plaintiff alleged that the basis of the grievance was that his position with the school district was "terminated" because the school district had violated its policies 4117, 4118 and 4119.

The school district took the position that any grievable incident had occurred on March 30, and the grievance procedure was not commenced within 30 "teacher employment days," thereafter and was not timely filed as required by the Grievance Procedures. For that reason the defendant refused to participate in the grievance proceeding. Plaintiff went through each step of the grievance procedure leading to an ex parte hearing before an arbitrator.[3] The arbitrator confined his consideration to the Rules and Regulations of the Board without reference to the statutes and recommended that plaintiff be given a contract for the school year 1973–1974 with compensation from the beginning of the school year. The School Board, in keeping with its position, took no action with respect to the findings and recommendations of the arbitrator.

Plaintiff had not secured a teaching position at the time of trial. At that time he was employed by a restaurant operated by a corporation which he had organized and in which he had a substantial interest.

---

1. A "probationary teacher" by statutory definition is "any teacher . . . who has been employed full time in the same school district for five successive years or less." § 168.104(5) RSMo.

2. Omitting formal parts, the letter read:

"This is to advise you that the Board of Education, at its meeting held Wednesday evening, April 4, 1973, decided not to renew your contract for the school year 1973–74."

3. Arbitration as provided in the procedures is merely advisory.

Our review is governed by Rule 73.01 subsection 3, the judgment of the trial court will not be set aside "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo.1976).

### Plaintiff's Appeal

Plaintiff contends that:

"The court erred in failing to enter judgment of reinstatement in favor of plaintiff and against defendant for the reason that there was competent and substantial evidence of plaintiff's right to be reinstated as a result of intentional violations and breaches by defendant of specific terms of plaintiff's contract, specifically, Policies 4117, 4118, 4119 and the Grievance Procedure of the Mehlville School District."

A brief review of the provisions of the policies relied upon is necessary to our discussion. Policy 4117 defines the term "District Probationary Teacher" as " . . . a teacher whose evaluation falls below the minimum standards as required by the District." The policy also describes the status of District Probationary Teachers and provides that they shall be given professional assistance to improve the quality of their teaching and that those who have not succeeded in meeting the standards shall be notified of that fact before April 15 of any school year.

Policy 4118, titled "Tenure," provides that the regulations are intended to be in compliance with the Teacher Tenure Act, §§ 168.102 to 168.130 RSMo. and that if the regulations are in conflict with the Act, the Act will govern. 4118 defines the term "permanent teachers" as "Teachers who have been, or who will hereafter be, employed 'full time' in the District for five or more consecutive years . . . ." This definition parallels the definition in § 168.-104(4). This policy also defines probationary teachers essentially as defined in 168.-104(5), as teachers who have been with the district for five years or less.

Other subjects of 4118, as they relate to this cause concern the termination of the employment of permanent and probationary teachers. The two categories are treated separately. A "permanent teacher" may be terminated by the Board for numerous reasons set out in the policy but only after written notice and hearing. Permanent teachers may also request an appeal.

Of particular relevance to our consideration is that portion of 4118 designated "Grounds and Procedures for Termination by the Board of a Probationary Teacher." [4] This portion of the policies is essentially the same as § 168.126 subdivision 2.[5]

4. " . . .

B. Procedures:

1. Should the board determine that a probationary teacher is "incompetent, insufficient or insubordinate in line of duty, is willfully or persistently violating or failing to obey laws and regulations, has been excessively or unreasonably absent from the performance of duties or is not doing satisfactory work, through its administrative representative, it shall give the teacher a written statement directly setting forth such determination and specifying the nature thereof. If improvement satisfactory to the Board has not been made within ninety (90) days after the teacher's receipt of such notification, the Board may terminate the teacher's employment at any time thereafter during or at the end of the school year, except that, any such teacher shall be notified of termination of employment no later than the 15th day of April that he will not be retained for the following school year.

2. Should the grounds for termination be one of those listed grounds other than those in 1 above, . . . "

5. " . . .

2. If in the opinion of the board of education any probationary teacher has been doing unsatisfactory "work, the board of education through its authorized administrative representative, shall provide the teacher with a written statement definitely setting forth his alleged incompetency and specifying the nature thereof, in order to furnish the teacher an opportunity to correct his fault and overcome his incompetency. If improvement satisfactory to the board of education has not been made within ninety days of the receipt of the notification, the board of education may terminate the employment of the probationary teacher immediately or at the end of the school year . . . . "

Policy 4119 provides that separation from the professional staff shall be in accordance with the Teacher Tenure Act, §§ 168.102 to 168.130. It also states, "[I]n general, it is the policy of the District to give early notice to a teacher who is not working up to District standards and to make every attempt to assist such a teacher to improve the quality of his/her work."

As we read plaintiff's argument he contends that the Board policy statements of 4117 and 4119 accord to him the procedure set out in policy 4118 B under the heading "Grounds and Procedures For Termination by the Board of A Probationary Teacher" and under 168.126, subdivision 2 of the Teacher Tenure Act. He claims that, within the spirit of Policies 4117, 4118 and 4119, he should have been given 90 days after receipt of notification that his work was unsatisfactory in which to make the necessary improvement so that he could be retained on the professional staff.

Much the same contention was made in *White v. Scott County School District No. R–V*, 503 S.W.2d 35 (Mo.App.1973). That case dealt only with the interpretation of 168.126 and did not involve the question of policies and regulations. In *White*, the School Board declined to renew the contract of plaintiff, a probationary teacher, because her work was unsatisfactory and gave her notice on April 9, 1971. The Board did not afford plaintiff an opportunity to correct the alleged deficiencies within ninety (90) days as provided in § 168.126 subdivision 2. The court held that probationary teachers have no tenure, their contracts are for one school year. The provision relating to the ninety (90) day provision for correcting deficiencies applied only to ". . . the act of discharging or dismissing a probationary teacher . . . by terminating the existing contract of present employment . ." The ninety day period was not applicable to the determination of the School Board not to enter into a contract of employment with a probationary teacher in the succeeding school year.

That portion of 4118 which plaintiff seeks to invoke here is concerned only with the termination of existing contracts of employment, it does not speak to the issue of the School Board's determination not to renew the contract of a probationary teacher.

■ It is clear from a reading of Policies 4118 and 4119 that it was not the intent of the School Board to modify or extend the rights of teachers with respect to employment and tenure beyond the limits of the Teacher Tenure Act §§ 168.102 to 168.130. Policy 4118 provided that the policy is intended to comply with the Teacher Tenure Act and any conflicts are to be resolved in favor of the statute. Policy 4119 specifically provides that separation from the professional staff "must proceed according to . . . the Teacher Tenure Act . ."

■ If the regulations could be read as restricting defendant's power to refuse to renew the contract of a probationary teacher the regulations to that extent would be contrary to the statutory power vested in the school district and could not operate to infringe that power. Analogous to this situation, see *Russell v. City of Raytown*, 544 S.W.2d 48 (Mo.App.1976) and *Loman v. Tharp*, 542 S.W.2d 306 (Mo.App.1976).

■ Under the Teacher Tenure Act and the regulations, the defendant was under no obligation to retain plaintiff for the school year 1973–1974; the plaintiff was under no obligation to remain with the defendant for the succeeding school year. If the school does not wish to rehire the probationary teacher for the next school year its only obligation is to give the teacher notice of that fact "[o]n or before the fifteenth day of April, but not before April first . . . ." § 168.126; *White*, supra at 36. The regulations of the School Board provided no greater rights to the teacher than did the statute. The School Board was in compliance with the statute when it notified plaintiff that he would not be given a contract for the school year 1973–1974. The trial court did not err in its determination that plaintiff was not entitled to be reinstated.

### Defendant's Appeal

Defendant appeals from that portion of the judgment in favor of plaintiff for breach of the contract of employment and the award of $7,500 in general damages. Defendant contends that there was no breach of the contract; if the contract was breached plaintiff suffered no compensable damages; that plaintiff had been fully paid under his contract of employment; and that there is no provision in the law for general damages upon the breach of a contract.

Primarily we must determine what action or inaction on the part of defendant it is contended constituted a breach of contract.

The trial court made the following interlocutory findings:

"[p]laintiff's contract with the District was valid and enforceable, and the Board could validly bind itself by contract to follow certain procedures or 'policies' designed to salvage faltering teachers by evaluating their work, notifying them of their deficiencies and assisting them to bring their work up to District standards and expectations. Here it was shown that the principal and other supervisors at plaintiff's school for a substantial period before March 30, 1973 thought that he was not doing his job. Yet there is no evidence that they so informed him until *after* they decided that his contract would not be renewed. There is no evidence that they helped him in any way as the District by policies made a part of plaintiff's contract had promised him.

"If those promises were a part of plaintiff's contract—as we hold they were—and if they were breached—as the undisputed evidence discloses—then plaintiff is entitled to some remedy. We cannot reinstate him since he never *terminated* but only non-renewed. *White*, supra. We could not force back into service a probationary teacher whom the Board regarded as incompetent, even if we had power to do so. Moreover, plaintiff has an adequate remedy by law by way of damages."

The court thereafter held a hearing confined to the question of damages. After that hearing the court adopted its interlocutory findings and made additional findings. The pertinent portions read as follows:

"I find that there has been a breach of the contract as I have previously held and found, and I re-adopt all of my findings of fact and conclusions of law heretofore filed.

. . . The policy that was offered to the teachers and held out as a condition of the contract was possibly more misleading than if it had been in a flat contract, because it implied and required good faith and not just a mercantile promise. So I find that there is a breach of the condition of this man's employment. Call it a contract if you wish.

.     .     .     .     .

"But the thing that occurs to me as a matter of law and upon which I can make finding is that there has been a very substantial damage or loss here when a man is put out of his job."

Plaintiff in his brief argues that:

"The school district created a new category of teacher by policy 4117, a 'district probationary teacher'. This apparently is a teacher whose evaluation falls below the minimum standards as required by the district.

"Presumably on March 30, 1973, as a result of the annual evaluation, the plaintiff would have been within that category. 4117 as stated would require the district to place such a teacher on district probationary status and give as much professional help as necessary to improve the quality of teaching and to advise and inform that teacher as to whether or not the kind of service he or she was rendering was of such quality that would meet the standards of the district."

.     .     .     .     .

"When policies 4117 and 4119 are read together they can only be interpreted as creating a positive attitude or position of the school district with regard to salvaging teachers whose conduct or competence have slipped below 'acceptable standards.' "

The fallacy of plaintiff's position lies in the fact that defendant had the right to refuse to renew the contract without regard to plaintiff's evaluation. While the principal advised plaintiff that he would not be recommended for retention because "he was not doing the job," the determination with respect to renewal was the exclusive prerogative of the Board. The Board could act upon the recommendation of the administrators for the reasons given or for no reason. The letter which the Board sent to plaintiff gives no reason for its determination not to rehire plaintiff for the next school year.

Reading regulations 4117 and 4119 together as plaintiff asks, we note that the policy of the Board as set out in 4119 reads:

"In general, it is the policy of the District to give early notice to a teacher who is not working up to District standards and to make every attempt to assist such a teacher to improve the quality of his/her work."

■ Of significance is the phrase "In general." It has been said that "[T]he phrase 'in general' is not inflexible or absolute but carries with it the idea that under certain conditions there may be a variation from the standard without constituting a violation of the rule." *Woody v. South Carolina Power Co.*, 202 S.C. 73, 24 S.E.2d 121 (1943). The phrase has the connotation of "not imperative." No absolute duty was placed upon defendant to counsel plaintiff before the Board could make the determination not to offer plaintiff a contract for the succeeding school year. If viewed as a promise, we are of the opinion that regulations 4117 and 4119 as incorporated into the contract are not sufficiently definite to enable a court to definitely measure the extent of the liability of the defendant and to determine the measure of damages in the event of a breach. See *Ogilvie v. Ogilvie*, 487 S.W.2d 40 (Mo.App.1972) where a promise to "aid and assist" in the payment of a promissory note was held to be too indefinite. In the case at hand there is no assurance that any amount of assistance and counseling to a deficient probationary teacher would result in his retention. No matter how proficient, he has no property right which entitles him to a contract for the succeeding year. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 548 (1972).

■ Plaintiff further argues that "[t]he most important policy which bound both plaintiff and defendant was 4118." He argues that this procedure provided in that policy is applicable to both termination during an existing contract and the failure to renew a probationary teacher and that he was entitled to a 90 day period to display improvement satisfactory to the Board or to notice and a hearing before he was non-renewed. The pertinent portions of 4118 are set out in footnote 4, supra. What we have said with respect to 4118 in plaintiff's appeal is equally applicable here. The portion of Section 4118 of the regulations which plaintiff would have us invoke is parallel with § 168.126(2) and refers only to termination of an existing contract. See *White v. Scott County School District No. R–V*, supra. We find no breach of contract by reason of any failure on the part of defendant to follow the provisions of section 4118 of the regulations.

We are in agreement with the trial court in its conclusion that the refusal of defendant to join in the grievance procedure was not a breach of the contract. The determination not to extend a contract to a probationary teacher is not grievable.

■ The only basis for plaintiff's claim for damages as recognized by the trial court is plaintiff's loss of employment.[6] In the final analysis, where the regulations of a school board cannot be read so as to restrict the power of the board to refuse renewal of a probationary teacher, as we have previously said, the failure to renew, for whatever reason, cannot be the basis of a claim for damages.

6. "But the thing that occurs to me as a matter of law and upon which I can make a finding is that there has been a very substantial damage or loss here when a man is put out of his job."

We find that the trial court erred in rendering judgment for plaintiff for damages.

The judgment of the trial court denying plaintiff's reinstatement is affirmed. The judgment of the trial court awarding damages to plaintiff is reversed.

McMILLIAN, P. J., and REINHARD, J., concur.