537 F.Supp. 338 (1980)
Howard DERRICKSON, Plaintiff,
v.
BOARD OF EDUCATION OF the CITY OF ST. LOUIS, a Body Corporate, and Gordon L. Benson, Anita L. Bond, Frederick E. Busse, Henry M. Grich, Betty Klinefelter, Cecil Howard, Lawrence E. Nicholson, Daniel L. Schlafly, Marjorie Smith, Dorothy C. Springer, Marjorie M. Weir, and Donald W. Williams, constituting and being members of the Board of Education of the City of St. Louis, and Robert E. Wentz, and Burchard Neel, Jr., and John R. Spicer, Principal for the Board of Education of the City of St. Louis, Defendants.
No. 78-984C (5).
United States District Court, E. D. Missouri, E. D.
November 6, 1980.
Opinion After Trial March 31, 1982.
*339 *340 Anthony J. Sestric, St. Louis, Mo., for plaintiff.
Stephen A. Cooper, Thomas E. Tueth and Kenneth C. Brostron, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, Mo., for defendants.

MEMORANDUM
CAHILL, District Judge.
This matter is before the Court on the defendants' motion for summary judgment and motion to strike plaintiff's request for a jury trial.
Plaintiff is a former teacher at McKinley High School in St. Louis. He alleges that the Board of Education of the City of St. Louis terminated his employment for constitutionally impermissible reasons. He brings this action under 42 U.S.C. § 1983 and he names as defendants the Board of Education, the individual Board members, the Superintendent and Associate Superintendent of the school system, and the principal of McKinley High School. Plaintiff alleges that: (Count I) his dismissal was a reprisal for the exercise of his First Amendment right to free expression, (Count II) his dismissal deprived him of a protected property interest in his employment without due process, (Count III) his dismissal deprived him of a liberty interest without due process, *341 (Count IV) his dismissal violated his right to equal protection, and (Count V) his dismissal violated his right to be free from arbitrary, capricious, and unlawful conduct. Plaintiff seeks reinstatement at his former position, compensatory damages, $1,000,000 in punitive damages, attorney's fees, and costs.
Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Summary judgment is a drastic remedy. It should not be granted unless the moving party has established his right to judgment with such clarity that there is no room for controversy and the nonmoving party is not entitled to recover under any discernible circumstances. Arkansas State Highway Employees Local 315 v. Kell, 628 F.2d 1099 (8th Cir. 1980) (# 79-1541, August 26, 1980).
Count II alleges that plaintiff was deprived of a property interest. Whether Derrickson had a cognizable property interest in his employment must be determined by reference to state law. For the purposes of 42 U.S.C. § 1983, property interests are created and defined by independent sources such as state law, rules, or understandings that support a person's claims of entitlement to certain benefits. Vruno v. Schwarzwalder, 600 F.2d 124, 129 (8th Cir. 1979), citing Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
Under section 168.221(1) of the Missouri Revised Statutes (1967):
The first three years of employment of all teachers and principals entering the employment of the metropolitan school district shall be deemed a period of probation during which period all appointments of teachers and principals shall expire at the end of each school year. During the probationary period any probationary teacher or principal whose work is unsatisfactory shall be furnished by the superintendent of schools with a written statement setting forth the nature of his incompetency. If improvement satisfactory to the superintendent is not made within one semester after the receipt of the statement, the probationary teacher or principal shall be dismissed. The semester granted the probationary teacher or principal in which to improve shall not in any case be a means of prolonging the probationary period beyond three years and six months from the date on which the teacher or principal entered the employ of the board of education. The superintendent of schools on or before the fifteenth day of April in each year shall notify probationary teachers or principals who will not be retained by the school district of the termination of their services. Any probationary teacher or principal who is not so notified shall be deemed to have been appointed for the next school year.
Although plaintiff concedes that he had not completed three years of employment with the St. Louis School Board, plaintiff asserts that the Board was required to waive one year of his probationary period because of his previous employment in the Webster Groves School District. Such is not the case. Mo.R.S. § 168.221 provides for no such exception. Although § 168.104(5) of the Missouri Teacher Tenure Act provides for a waiver of one year of a teacher's probationary period where the teacher has been employed in another school system for two or more years, the Teacher Tenure Act, by definition, is not applicable to teachers in metropolitan school districts. See § 168.104(1, 6, and 7). Thus, it is clear that plaintiff was a probationary teacher.
As a probationary teacher under Missouri law plaintiff had no property interest in continued employment. Meyr v. Board of Education of Affton School District, 572 F.2d 1229, 1231 (8th Cir. 1978). Plaintiff was properly notified that his contract would not be renewed. Plaintiff was entitled to nothing more than this timely notice. Even assuming that the Board's termination procedures did not afford plaintiff a semester within which to improve his performance, that, without more, did not *342 confer on plaintiff a cognizable property interest in continued employment. The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension. Vruno, 600 F.2d at 130-31. A violation of the termination procedures does not present a constitutional claim in the absence of a cognizable property interest. Summary judgment is granted for the defendants on Count II.
Plaintiff also contends that his termination deprived him of his constitutionally protected interest in liberty. Deprivation of a liberty interest occurs when non-retention of a teacher imposes on him a stigma or other disability foreclosing his future employment opportunities or resulting in significant damage to his standing and associations in the community. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); Clark v. Mann, 562 F.2d 1104, 1115 (8th Cir. 1977); see Johnson v. Rogers, 621 F.2d 300, 305 (8th Cir. 1980); Owen v. City of Independence, Mo., 589 F.2d 335, 338 (8th Cir. 1978). Plaintiff's liberty interest would be at issue if the defendants based his termination on charges which impugned plaintiff's good name, reputation, honor, or integrity, and made those charges public or available to prospective employers. Roth, 408 U.S. at 573, 92 S.Ct. at 2707.
Plaintiff has not shown a deprivation of liberty here. Plaintiff alleges that his termination was based on his criticisms of disciplinary problems and violence at McKinley High School, his refusal to provide an alibi for a student, and his testimony before a grand jury. Even assuming this to be true, plaintiff's termination was not based on charges which stigmatize plaintiff or call his character into question. Charges that plaintiff failed to meet the standards of competency required to merit tenure do not impinge upon plaintiff's liberty interest. Norbeck v. Davenport Community School District, 545 F.2d 63, 69 (8th Cir. 1976), cert. denied, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977). Plaintiff has not indicated any stigmatizing information related to his termination, and thus no protected liberty interest was violated. Summary judgment is granted for defendants on Count III.
Count IV of the complaint alleges that:
[d]efendants deprived Plaintiff of his constitutionally guaranteed right to equal protection under the law by dismissing him when Defendant, School Board, has policies, practices, rules, and understandings which allow teachers with less satisfactory evaluations to be employed and appointed as permanent teachers in that Plaintiff's dismissal by Defendant, School Board, was discriminatory.
Under the traditional equal protection analysis, the Court must decide, first, whether the policy operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution. If not, the policy must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute invidious discrimination. Reproductive Health Services v. Freeman, 614 F.2d 585, 592 (8th Cir. 1980), citing San Antonio School District v. Rodriguez, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). The classifications suggested by plaintiff are his own creations, not the defendants'. No suspect class is discriminated against here. Nor is public employment a fundamental right. See Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312-13, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Thus, the defendants' "policies" need only be rationally related to a legitimate state purpose. The purpose of the Missouri Teacher Tenure Act is to provide employment security for those who have shown by educational attainment and by a probationary period their fitness for the profession of teaching. Lopez v. Vance, 509 S.W.2d 197, 202 (Mo.App.1974). Decisions regarding tenure involve highly subjective determinations. As plaintiff has indicated, tenure decisions may not be dependent solely upon the teacher's periodic performance evaluations. The Board could properly refuse to renew plaintiff's contract *343 without regard to the performance evaluations. Revelle v. Mehlville School District R-9, 562 S.W.2d 175, 181 (Mo.App.1978). Predicating tenure decisions on information received from other sources is not, in itself, irrational. Further, comments contained in plaintiff's performance evaluations suggested that there were reasons other than teaching proficiency which militated against granting plaintiff tenure. Thus the denial of tenure to plaintiff was not irrational even though he had never received an unsatisfactory evaluation. In addition, the Court is persuaded by the reasoning in Clark v. Whiting, 607 F.2d 634, 638-40 (4th Cir. 1979), that federal courts should not sit as "super-Tenure Review Committees" when a plaintiff employs the "I'm just as good as you are" argument. Accordingly, summary judgment is granted for defendants on Count IV.
Count V alleges that:
Defendants deprived Plaintiff of his constitutionally guaranteed rights protecting him from arbitrary, capricious, and unlawful conduct of Defendants by dismissing him when he testified before the St. Louis Circuit Court Grand Jury contrary to the desire of Defendant, Spicer.
To the extent that this claim encompasses issues raised in Counts II, III, and IV, summary judgment is granted for the defendants. In the absence of a cognizable liberty or property interest, § 1983 does not protect plaintiff from being terminated for an arbitrary or capricious reason, or for no reason at all. See Revelle, 562 S.W.2d at 181. To the extent that First Amendment issues are raised by plaintiff's allegations, i.e., that his dismissal was the result of his testimony before the grand jury, this claim is incorporated into Count I of the complaint.
Count I of the complaint alleges that:
Defendants deprived Plaintiff of his constitutionally guaranteed rights to exercise free speech by dismissing him when he made statements about the increasing problems of violence at McKinley High School and made various suggestions to Defendants concerning the management of such problems, in that Plaintiff's dismissal was a reprisal for his expression of his views on matters of public concern and for testifying before the St. Louis Circuit Court Grand Jury, contrary to the desire of Defendant Spicer.
Named as defendants are the Board of Education of the City of St. Louis; twelve individual Board members; Robert Wentz, the Superintendent of Schools; Burchard Neel, Jr., the Associate Superintendent; and John Spicer, the principal of McKinley High School.
Conduct protected by the First Amendment may be a substantial factor in a school board's decision not to renew a teacher's contract where the school board can show by a preponderance of the evidence that the teacher's contract would not have been renewed in the absence of the protected conduct. Mt. Healthy City School District v. Doyle, 429 U.S. 274, 285-87, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977); Meyr v. Board of Education, 572 F.2d 1229, 1232-33 (8th Cir. 1978).
Initially, the burden is on the plaintiff to show that his protected conduct was a substantial factor in the Board's decision not to rehire him. Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576; Meyr, 572 F.2d at 1233. In addition, the doctrine of qualified good faith immunity extends to school officials: an official is liable under section 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the aggrieved party, or if the official took the action with the malicious intention to cause a deprivation of constitutional rights. Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975).
Defendants Benson, Busse, Grich, Klinefelter, Nicholson, Schlafly, Smith, Springer, Weir, and Williams each have submitted an affidavit which states that plaintiff's testimony before the grand jury and comments on the working and teaching conditions, educational deficiencies, and violence in the schools did not influence his or *344 her vote in any way. The plaintiff has not indicated any evidence which refutes these statements in his affidavit or elsewhere. Thus, the defendants have shown that plaintiff's protected conduct was not a substantial factor in the Board's decision not to renew plaintiff's contract. Alternatively, even if plaintiff's protected conduct was a substantial factor in his non-retention, there is no factual dispute that the Board members acted in good faith. Accordingly, summary judgment is granted for defendants Benson, Busse, Grich, Klinefelter, Nicholson, Schlafly, Smith, Springer, Weir and Williams on Count I.
Defendant Bond was not present at the meeting at which the Board decided not to renew plaintiff's contract. Defendant Howard was not a member of the Board at the time plaintiff's contract was not renewed. Accordingly, summary judgment is granted for defendants Bond and Howard on Count I.
Plaintiff alleges that defendant Spicer, the principal of McKinley High School, threatened plaintiff with dismissal unless plaintiff testified falsely before a grand jury that was investigating an incident at the school. Plaintiff also alleges that defendants Neel and Wentz wrongfully recommended to the Board that plaintiff's employment be terminated. Thus, an issue of material fact remains: whether Spicer, Wentz, and Neel would have recommended the termination of plaintiff's employment in the absence of plaintiff's protected conduct. Accordingly, summary judgment is denied for defendants Spicer, Wentz and Neel on Count I.
The good faith of the Board members individually does not affect the liability of the Board of Education. Thus, it may not be dismissed as a defendant on this motion. The Supreme Court has recently held that a municipality may not assert the good faith of its officers or agents as a defense to liability under section 1983. Owen v. City of Independence, Mo., 445 U.S. 622, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980).
The motion to strike the plaintiff's request for a jury trial is denied. In addition to reinstatement, the plaintiff seeks the recovery of monetary damages, triable by a jury under 42 U.S.C. § 1983.

JUDGMENT AND ORDER
In accordance with the memorandum opinion filed this day and incorporated herein,
IT IS HEREBY ADJUDGED and DECREED that judgment is entered for defendants Board of Education of the City of St. Louis, Robert E. Wentz, Burchard Neel, Jr., and John R. Spicer, and against plaintiff Howard Derrickson.
IT IS FURTHER ORDERED that defendants request for the assessment of attorneys' fees against plaintiff Derrickson is DENIED.

MEMORANDUM OPINION

Opinion After Trial
Howard Derrickson commenced this action under 42 U.S.C. § 1983 against the Board of Education of St. Louis, Missouri (School Board); Robert E. Wentz, Superintendent, St. Louis Board of Education; Burchard Neel, Jr., Associate Superintendent and Director of Personnel, School Board; and John R. Spicer, Principal, McKinley High School, a school within the St. Louis public school system. Other parties were initially named as defendants but dismissed from this action via a motion for summary judgment.[1]
Derrickson alleges in his complaint that defendants dismissed him from his teaching position at McKinley High School as a reprisal for exercising rights conferred by the First Amendment to the United States Constitution. Derrickson seeks reinstatement, back pay, and damages.
*345 Originally the complaint stated five (5) counts; however the Court's order of November 6, 1980 dismissed Counts II, III, and IV, and incorporated some issues involved in Count V into Count I. Thus, Derrickson's First Amendment claim alleged in Count I remains as the only justiciable issue in this lawsuit.
Live testimony was adduced in open court. However, inasmuch as the case was tried without a jury, the parties agreed to present much of the evidence through transcripts of deposition testimony. After carefully reviewing the record before the bench, the Court has determined the findings of fact and conclusions of law as follows.

Jurisdiction
The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1343(3), 28 U.S.C. § 1343(4), 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the First and Fourteenth Amendments to the United States Constitution.

Findings of Fact
This matter arose from an unfortunate incident that resulted in injury to a student at McKinley High School.
Derrickson was a probationary teacher at McKinley pursuant to Mo.Rev.Stat. § 168.221(1).[2] In August, 1976, the School Board assigned Derrickson to McKinley and there he taught until he was discharged in 1978.
Generally, probationary teachers are evaluated at least three (3) times during an academic school year; once at mid-first semester, at the end of the first semester, and at the conclusion of the second semester. The principal of each school is responsible for evaluating teachers' performance and making recommendations to the School Board on their retention or nonretention. Frequently, the principals will appoint administrative aids to canvass the classrooms and observe the teachers' rapport with students and other teachers and the various teaching methodologies. Those administrators then report their observations to the principal. Largely based on the findings of the administrators,[3] the principal rates the overall performance of the teachers and transmits his recommendations to the School Board. If the principal's recommendation is contrary to the weight of the information contained in a teacher's personal file, the School Board may allow the principal to reconsider his position or disregard totally the recommendation.
On February 15, 1978, Mrs. Mary S. Waggoner, Vice-Principal, McKinley, submitted a report concerning Derrickson to Principal Spicer. The report reflected adversely on Derrickson's ability to interrelate with the McKinley students. Prior to the February 15 report, Derrickson had experienced difficulty in associating with other teachers and *346 fostering a favorable teacher-student relationship.
On February 16, 1978, a McKinley student was injured by a falling desk. Derrickson was somewhat the focal point of that incident and ultimately was subpoenaed to testify about the tragic event. On March 14, 1978, Derrickson testified before the St. Louis Circuit Court Grand Jury.
On March 10, 1978, defendant Spicer signed a recommendation against retaining Derrickson as a teacher at McKinley.
On March 13, 1978, the final draft of the March 10 recommendation was prepared by Spicer along with detailed reasons supporting his position. Spicer cited in the recommendation Derrickson's antagonistic attitude toward students and fellow professionals. Spicer also cited Mrs. Waggoner's February 15, 1978 report which detailed three specific incidences of Derrickson's questionable conduct. Also cited in the report was the "desk-dropping" incident that injured the McKinley student. In conclusion, Spicer stated that the recommendation for nonretention was based upon "Mr. Derrickson's inflexibility and seemingly unwillingness to deal fairly and objectively with students and fellow professionals."
During the 1977-78 school year, the School Board had a requirement that all recommendations for nonretention were to be filed with the School Board's Personnel Division on or before March 10, 1978. However, filing a few days after March 10 was of no consequence and the recommendation was generally still acceptable. All notices of termination were required to be delivered before April 15 of the current academic year. (See note 2, supra.)
On March 14, 1978, defendant Wentz and the School Board followed the Spicer recommendation and, based on Derrickson's record, dismissed him from his position at McKinley without knowledge of Derrickson's exercise of speech protected by the First Amendment.
On March 15, 1978, defendant Spicer personally delivered a notice of termination to Derrickson. Derrickson subsequently requested a hearing on his dismissal but was denied.

Conclusions of Law
Derrickson was employed by the School Board for less than three years and thus retained his status as a probationary teacher. Mo.Rev.Stat. § 168.221(1) (1978). Derrickson could have been dismissed according to Missouri law if the School Board determined that he was not a suitable employee. Thus, Derrickson had to show more than mere termination of his employment contract to prevail on the merits in this action. Meyr v. Board of Education of Affton School District, 572 F.2d 1229 (8th Cir. 1978). However, even though Derrickson could have been discharged by the School Board, he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms. Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Initially, the burden was on Derrickson to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor" or "motivating factor" in the School Board's decision not to rehire him. Mount Healthy, 429 U.S. at 287, 97 S.Ct. at 576. The School Board may then show by a preponderance of the evidence that it would have reached the same decision as to Derrickson's reemployment even in the absence of the protected conduct. Id.
Assuming, without deciding, that Derrickson's speech was within the protection of the First Amendment, and that the speech was a substantial factor in Spicer's and the School Board's determination not to retain Derrickson, the Court finds that defendants have proven well beyond a preponderance of the evidence that the decision not to retain the teacher would have been the same notwithstanding the protected speech.
As stated before, Derrickson predicates his claim for relief on conduct surrounding *347 the February 16, 1978 desk-dropping incident. The Court is convinced that the decision to recommend Derrickson for nonretention had, for the most part, been made prior to that time. Therefore the School Board has carried its burden and is entitled to judgment.

Attorneys' Fees
The defendants have also requested attorneys' fees. But the Court, in its discretion, finds that the plaintiff did not act either with malice, indifference, or with a glaring disregard for the truth. In truth, there is much to commend in the plaintiff's mental attitudes in wanting to be a good and productive educator and being willing to engage in constructive criticism. His insistence upon industry among the students is a trait to emulate. While the Court does understand the embarrassment of the administrators concerning the desk-throwing incident and their desire to conclude the matter as quickly as possible, the Court can also understand how Derrickson could sincerely believe that his discharge was simply retaliation for his candid comments regarding the matter. But the time sequence of events does not support him.
In substance, the Court finds no basis for the assessment of attorneys' fees against Derrickson and denies defendants' request for such payments.
NOTES
[1] Derrickson also named several members of the School Board as defendants. The Court, in an order dated November 6, 1980, granted judgment for members of the School Board on all counts.
[2] That section provides:

168.221. Probationary Period for Teachers and principals  removal of probationary and permanent personnel  hearing  demotions  reduction of personnel (metropolitan districts)
1. The first three years of employment of all teachers and principals entering the employment of the metropolitan school district shall be deemed a period of probation during which period all appointments of teachers and principals shall expire at the end of each school year. During the probationary period any probationary teacher or principal whose work is unsatisfactory shall be furnished by the superintendent of schools with a written statement setting forth the nature of his incompetency. If improvement satisfactory to the superintendent is not made within one semester after the receipt of the statement, the probationary teacher or principal shall be dismissed. The semester granted the probationary teacher or principal in which to improve shall not in any case be a means of prolonging the probationary period beyond three years and six months from the date on which the teacher or principal entered the employ of the board of education. The superintendent of schools on or before the fifteenth day of April in each year shall notify probationary teachers or principals who will not be retained by the school district of the termination of their services. Any probationary teacher or principal who is not so notified shall be deemed to have been appointed for the next school year.
[3] This is not to say that principals never observe a teacher's mode of instruction. Principals often have ample opportunities to personally evaluate a teacher's performance and often do so.