703 F.2d 309
 10 Ed. Law Rep. 50
 Howard DERRICKSON, Appellant,
v.
BOARD OF EDUCATION OF the CITY OF ST. LOUIS; Robert E.
Wentz; Burchard Neel, Jr.; John R. Spicer,
Principal for the Board of Education of
the City of St. Louis, Appellees.
 No. 82-1501.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 10, 1983.
Decided March 30, 1983.
 
 Anthony J. Sestric, St. Louis, Mo., for appellant.
 Judson W. Calkins, Amy R. Hinderer, Lashly, Caruthers, Baer & Hamel, A Professional Corp., St. Louis, Mo., for appellees.
 Before HEANEY and McMILLIAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Howard Derrickson, a former teacher at McKinley High School in St. Louis, Missouri, filed this action against the Board of Education of the City of St. Louis [Board], its individual members, and various other individual defendants, alleging deprivation of several of his constitutional rights under color of state law in violation of 42 U.S.C. Sec. 1983 (Supp. III 1979). Specifically, Derrickson alleged that the failure to retain him as a tenured teacher at McKinley High School after the 1977-1978 academic year deprived him of: (1) the right to free speech protected by the first and fourteenth amendments to the United States Constitution; (2) property and liberty interests protected by the fourteenth amendment, without due process of law; (3) the right to equal protection of the laws guaranteed by the fourteenth amendment; and (4) his right to be free from arbitrary, capricious, and unlawful conduct by public officials.
 
 
 2
 On November 6, 1980, the district court granted summary judgment in favor of all defendants as to each of Derrickson's allegations except for his free speech claim.[1] In addition, the court granted summary judgment on Derrickson's free speech claim as to twelve individual Board members who either (1) submitted uncontroverted affidavits stating that Derrickson's exercise of speech did not affect their actions and asserting their good faith in voting on Derrickson's nonretention; (2) were not present when the Board voted on Derrickson's nonretention; or (3) did not belong to the Board at that time. Derrickson v. Board of Education of St. Louis, 537 F.Supp. 338, 343-344 (E.D.Mo.1980). After ruling on the defendants' motion for summary judgment, the district court tried, without a jury, Derrickson's free speech claim against the defendant Board and individual defendants Robert E. Wentz, Superintendent of Schools; Burchard Neel, Jr., Associate Superintendent and Director of Personnel; and John R. Spicer, Principal of McKinley High School. The court found for all defendants on this claim.[2]
 
 
 3
 Derrickson appeals from the partial grant of summary judgment, alleging that Missouri statutory law and the regulations of the Board establish a property interest in continued public employment which the defendants took from him without the due process required by the fourteenth amendment. He also appeals from the judgment of the district court following the trial of his free speech claim.[3] We affirm the partial grant of summary judgment, but reverse and remand the district court's judgment on the free speech claim.
 
 I. FACTS
 
 4
 After several decades of teaching experience in Massachusetts and Missouri, Howard Derrickson began full-time work for the Board at Central High School in St. Louis in the fall of 1975. He missed much of the spring semester of 1976 at Central because of illness, but the Board retained him for the following academic year, 1976-1977, and reassigned him to McKinley High School for that year. He successfully completed his first year at McKinley and his principal there, John R. Spicer, recommended his retention for the following year. The Board offered Derrickson a one-year contract to remain at McKinley during the 1977-1978 academic year. Derrickson accepted. The 1977-1978 contract was the third full-time, one-year employment contract between Derrickson and the Board since 1975.
 
 
 5
 Spicer made periodic written evaluations of Derrickson's performance at McKinley from 1976 through 1978. These evaluations were made pursuant to Board policies regarding probationary teachers. All teachers and principals in the St. Louis metropolitan school district are probationary employees during their first three years of employment by the Board. Mo.Ann.Stat. Sec. 168.221 (Vernon Supp.1983). The evaluations all found Derrickson "satisfactory" overall, but several of them noted areas in which he needed improvement.
 
 
 6
 The district court found, however, that by February of 1978, Derrickson was experiencing serious difficulties in relating with the administration, faculty, and students at McKinley. These difficulties centered around Derrickson's high expectations of student performance and his tendency to insist on total agreement with him whenever his opinion conflicted with that of his superiors or peers. On February 15, 1978, Vice-Principal Mary S. Waggoner submitted a memorandum to Principal Spicer detailing these difficulties and expressing that Waggoner had "reached a point of finding no common ground for communication with [Derrickson]."
 
 
 7
 On February 16, 1978, some students at McKinley threw a desk down a stairwell in the school, seriously injuring another student. Derrickson was checking identification badges in the hall at that time and assisted in identifying students who were in the area when the incident occurred. A St. Louis Circuit Court subpoenaed Derrickson to testify before a grand jury investigating one of these students.
 
 
 8
 The district court further found that Spicer had decided on or before March 10, 1978, to recommend that the Board not retain Derrickson for the 1978-1979 academic year. Spicer wrote a report in support of this recommendation, dated March 13, 1978, citing the specific incidents mentioned in Waggoner's February 15, 1978, memorandum, and also alleging certain difficulties which Derrickson later had in tutoring the student injured in the desk-dropping incident.
 
 
 9
 Derrickson testified before the St. Louis Circuit Court Grand Jury in connection with the desk-dropping incident sometime during the day on March 14, 1978. That evening, the Board met to decide on the retention or nonretention of several probationary teachers for the 1978-1979 academic year. On Spicer's recommendation, the Board voted not to retain Derrickson for that year.[4] A letter notifying Derrickson of the decision, signed by Superintendent Wentz and dated March 15, 1978, was personally delivered to Derrickson by Spicer on March 17, 1978.[5] Derrickson taught at McKinley for the remainder of the 1977-1978 academic year and, after unsuccessfully seeking reconsideration by the Board of its March 14 nonretention decision, he filed the instant action in the United States District Court for the Eastern District of Missouri.
 
 II. DUE PROCESS CLAIM
 
 10
 On appeal, Derrickson asserts that the district court erred in granting summary judgment in favor of all defendants on his due process claim because the defendants deprived him of property in violation of the fourteenth amendment. To sustain such a property interest procedural due process claim, Derrickson must first establish that he possessed a "legitimate claim of entitlement" to continued employment by the Board. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Derrickson could establish such a claim of entitlement by showing that he had a reasonable expectancy of continued employment by the Board based upon Missouri law, an express contract with the Board, or common "understandings" derived from the employer-employee relationship. See Perry v. Sindermann, 408 U.S. 593, 600-603, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); Brockell v. Norton, 688 F.2d 588, 590-591 (8th Cir.1982). Derrickson asserts that Missouri statutory law created such a reasonable expectancy in the present case.[6] He also asserts that the defendants' failure to follow Board regulations amounted to a constitutional deprivation in this case. We disagree with both assertions.
 
 
 11
 A. Missouri Statutory Law.
 
 
 12
 Derrickson first contends that the Missouri statute covering the removal of probationary teachers guaranteed him an extra semester in which to improve after his superiors decided that he should not be retained. He asserts that, at the very least, he had a legitimate claim of entitlement to that extra semester.[7]
 
 
 13
 The Missouri statute on which Derrickson relies reads in pertinent part:
 
 
 14
 The first three years of employment of all teachers and principals entering the employment of the metropolitan school district shall be deemed a period of probation during which period all appointments of teachers and principals shall expire at the end of each school year. During the probationary period any probationary teacher or principal whose work is unsatisfactory shall be furnished by the superintendent of schools with a written statement setting forth the nature of his incompetency. If improvement satisfactory to the superintendent is not made within one semester after the receipt of the statement, the probationary teacher or principal shall be dismissed. * * * The superintendent of schools on or before the fifteenth day of April in each year shall notify probationary teachers or principals who will not be retained by the school district of the termination of their services. Any probationary teacher or principal who is not so notified shall be deemed to have been appointed for the next school year.
 
 
 15
 Mo.Ann.Stat. Sec. 168.221(1) (Vernon Supp.1983).
 
 
 16
 Were we free to interpret this language on a clean slate, we would agree with Derrickson that this statute creates a reasonable expectancy of an additional semester of employment by the Board for a probationary teacher found "unsatisfactory" at any time during that teacher's probationary period. We do not have a clean slate on which to work, however, and are constrained by Missouri case law to affirm the district court's conclusion that Derrickson was not entitled to another semester of employment by virtue of section 168.221(1).
 
 
 17
 The statute is ambiguous; in the same paragraph, it states (1) that all probationary appointments "expire at the end of each school year," unless the superintendent fails to notify a probationary teacher of nonretention by April 15,[8] and (2) that a probationary teacher found "unsatisfactory" shall be given notice of such and shall be dismissed only if "improvement satisfactory to the superintendent is not made within one semester after the receipt of the [notice]." Id. The statute itself does not answer the question presented in the instant case: If the decision not to retain a probationary teacher for the upcoming academic year is made, in essence, because that teacher is "unsatisfactory," can the Board avoid granting the extra semester in which to improve merely by voting not to retain the teacher, delivering a nonretention notice prior to April 15, and allowing the teacher's present one-year contract to expire? We find that Missouri courts would answer this question in the affirmative.[9]
 
 
 18
 Missouri courts apparently have not addressed the issue in this case directly in the context of section 168.221, which covers the removal of metropolitan St. Louis probationary teachers such as Derrickson. Those courts, however, have definitively decided the issue in the context of a nearly identical statute which covers Missouri public school teachers outside the metropolitan school district, Mo.Ann.Stat. Sec. 168.126 (Vernon Supp.1983). Section 168.126 provides in part:
 
 
 19
 If in the opinion of the board of education any probationary teacher has been doing unsatisfactory work, the board of education through its authorized administrative representative, shall provide the teacher with a written statement definitely setting forth his alleged incompetency and specifying the nature thereof, in order to furnish the teacher an opportunity to correct his fault and overcome his incompetency. If improvement satisfactory to the board of education has not been made within ninety days of the receipt of the notification, the board of education may terminate the employment of the probationary teacher immediately or at the end of the school year. * * * On or before the fifteenth day of April but not before April first in each school year, the board of education shall notify a probationary teacher who will not be retained by the school district of the termination of his employment.
 
 
 20
 Id. Sec. 168.126(2). This statute possesses the same elements with regard to a finding of "unsatisfactory" performance as those in section 168.221, except that non-metropolitan probationary teachers are given only ninety days during which to improve after an "unsatisfactory" rating instead of the semester afforded to metropolitan probationary teachers in the same circumstances.
 
 
 21
 Missouri courts have consistently construed section 168.126 to create two totally separate procedures which a school district can use to end a probationary teacher's employment. As the Missouri Court of Appeals found in White v. Scott County School District No. R-V, 503 S.W.2d 35, 37 (Mo.App.1973), the school district may either "[dismiss] a probationary teacher (either immediately or at the end of the current school year) by terminating the existing contract of present employment after proper notice and a 90 day allowance for correction," or "[terminate] the employment (actually [avoid] rehiring) of a nontenured teacher for the ensuing school year through timely notice thereof." When the school district chooses the second procedure, which would not affect the teacher's existing one-year contract, it is "not, therefore, necessary that [the teacher] be given a written statement of [the teacher's] alleged deficiencies and a 90 day period for atonement." Id. Accord Revelle v. Mehlville School District R-9, 562 S.W.2d 175, 179 (Mo.App.1978). We followed this line of Missouri precedent, as applied to school district regulations which were substantially identical to section 168.126, in Meyr v. Board of Education of Affton School District, 572 F.2d 1229, 1231 (8th Cir.1978).
 
 
 22
 We have no reason to believe that the Missouri courts would fail to recognize this same dual termination procedure in the context of section 168.221, the section on which Derrickson seeks to rest his due process claim in the present case. We cannot help but find that the Board's decision not to retain Derrickson, which left his 1977-1978 one-year probationary contract intact, did not affect a property interest cognizable under the due process clause. Derrickson's only reasonable expectancy of continued employment was for the term of his 1977-1978 contract, which the Board fully respected. See Long v. Board of Education of St. Louis, 331 F.Supp. 193, 194 (E.D.Mo.1971), aff'd, 456 F.2d 1058 (8th Cir.1972) (dictum stating that, during the section 168.221 probationary period, "the appointment of the teacher expires at the end of each school year"). Even though we see this dual procedure as exalting the form of the termination over the substance of the matter, we agree with the district court that, as a matter of state law, the Board did not trigger the procedure which would have entitled Derrickson to an extra semester. As far as Missouri statutory law is concerned, Derrickson did not have a reasonable expectancy of continued employment by the Board which exceeded the employment term which he actually completed; that statutory law, therefore, cannot be the basis for his property interest procedural due process claim.
 
 
 23
 B. Board Regulations.
 
 
 24
 Derrickson also bases his property interest procedural due process claim on the defendants' failure to follow established Board procedures in deciding not to retain him after his third probationary year. The record reflects that in 1977 and 1978, the Board had written regulations covering third-year probationary teachers which provided for a special evaluating committee, appointed by the Director of Personnel, to submit a recommendation regarding those teachers' suitability for tenure to the Superintendent of Schools prior to March 15.[10] Derrickson asserts that the district court erred in granting summary judgment on his procedural due process claim because it neglected to consider these regulations and because the defendants failed to follow them in Derrickson's case.
 
 
 25
 The district court did not have the benefit of these regulations nor the evidence adduced at trial concerning the defendants' alleged noncompliance with the regulations when it granted summary judgment in favor of the defendants on Derrickson's procedural due process claim. The court recognized this limitation at trial, however, and allowed Derrickson to present evidence on this matter, over defendants' objection, in order to "get the clearest picture" of the case. That evidence was sufficient to support Derrickson's allegations that the special evaluating committee appointed in his case--Spicer, Waggoner, and Assistant Principal of Administration DeWitt Kilgore--may not have formally met and did not file a joint recommendation to the Superintendent by March 15, 1978. Taking all Derrickson's allegations of noncompliance with the regulations as true, however, we still affirm the grant of summary judgment for defendants in this case.
 
 
 26
 Derrickson argues that the defendants failed to comply with the regulations because the members of the special evaluating committee did not formally meet and all three members did not submit a formal committee recommendation to the Superintendent. He does not contest the facts that the members of the committee informally conferred about his nonretention and that Spicer and Waggoner, two of the three committee members, actively participated in the formal drafting of Spicer's report, dated March 13, 1978, which explained the reasons for Spicer's nonretention recommendation to the Board and Superintendent Wentz on March 14, 1978.
 
 
 27
 We agree that a state agency's failure to follow its own ordinances or regulations may constitute a deprivation of property without due process. See Wilson v. Robinson, 668 F.2d 380, 382-383 (8th Cir.1981) (county ordinance requiring two weeks notice prior to the termination of non-probationary sheriff's deputies creates a property interest protectable under the fourteenth amendment). Cf. McDonald v. Mims, 577 F.2d 951, 952 (5th Cir.1978) (state procedural protections cited as alternative source of the "property interest" held by "non-tenured" teachers in Mississippi). In this case, however, we find that the defendants' alleged minor deviations from the regulations at issue, as a matter of law, do not amount to such a constitutional deprivation. The Director of Personnel did appoint a special evaluating committee which in fact provided the input concerning Derrickson's suitability for tenure which the regulations were designed to provide.
 
 
 28
 We do not decide whether Derrickson has a valid cause of action as a matter of state law for the defendants' alleged noncompliance with Board procedure. See Brouillette v. Board of Directors of Merged Area IX, Alias Eastern Iowa Community College, 519 F.2d 126, 127-128 (8th Cir.1975) (compliance with state procedures considered as a separate question from the due process issue). We simply hold that, as a matter of constitutional law, the grant of summary judgment for defendants on Derrickson's due process claim was proper.
 
 III. FIRST AMENDMENT CLAIM
 
 29
 Derrickson's final contention on appeal is that defendants Wentz, Neel, Spicer, and the Board acted under color of state law to prevent his retention as a tenured teacher in violation of his right to free speech protected by the first and fourteenth amendments. The district court correctly found that, in order to succeed on this claim, Derrickson must first show that his conduct was protected by the first amendment and that the protected conduct was a "substantial" or "motivating" factor in the defendants' actions which resulted in his nonretention.[11] If Derrickson showed both these things, he would prevail unless the defendants proved by a preponderance of the evidence that their actions would have been the same even in the absence of the protected conduct. Derrickson v. Board of Education of St. Louis, supra, 537 F.Supp. at 346. See Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).
 
 
 30
 The district court assumed without deciding that some protected conduct by Derrickson was a substantial factor in his nonretention. It then held, however, "that defendants have proven well beyond a preponderance of the evidence that the decision not to retain [Derrickson] would have been the same notwithstanding the protected speech." Derrickson v. Board of Education of St. Louis, supra, 537 F.Supp. at 346.
 
 
 31
 On the record before us, we hold that this finding by the district court is not clearly erroneous as far as it goes, but we still must reverse and remand on this issue because the finding is insufficient to fully dispose of Derrickson's free speech claim. The district court made its finding on the erroneous assumption that Derrickson's allegedly protected speech was only his testimony before the grand jury following the desk-dropping incident, because Derrickson's main allegation was that Spicer retaliated when Derrickson refused to supply an alibi for the student under investigation. See id. at 346-347. Derrickson alleged in his complaint and testified at trial, however, that his internal criticism of the administration and faculty at McKinley prior to that incident was also a factor in his nonretention.
 
 
 32
 Derrickson had a constitutional right, under the first and fourteenth amendments, to privately express to his superiors, in a reasonable manner, his criticism of the educational or disciplinary policies at McKinley. Givhan v. Western Line Consolidated School District, 439 U.S. 410, 415-416, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979); Brockell v. Norton, supra, 688 F.2d at 593; Nathanson v. United States, 630 F.2d 1260, 1262-1263 (8th Cir.1980). See also Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968) (balancing test used to determine if speech is constitutionally protected). He could not be denied tenure because he exercised that constitutional right.
 
 
 33
 The findings made by the district court do not address whether Derrickson's criticism was made in a manner which inhibited his performance or the efficient operation of the school, or whether his criticism was not a "substantial" or "motivating" factor in his nonretention, or whether the defendants would have sought Derrickson's nonretention even absent that criticism. The district court simply found that the defendants would have acted the same absent Derrickson's "conduct surrounding the February 16, 1978 desk-dropping incident." Derrickson v. Board of Education of St. Louis, supra, 537 F.Supp. at 346-347.
 
 
 34
 Because, as we read the record, the factual resolution of this "internal criticism" issue cannot be made as a matter of law, we reverse the judgment on Derrickson's free speech claim and remand to the district court for more explicit findings with regard to this issue. See Brockell v. Norton, supra, 688 F.2d at 593. We retain jurisdiction pending such findings. The amended findings shall be promptly transmitted to this Court.
 
 IV. CONCLUSION
 
 35
 We affirm the district court's grant of summary judgment on Derrickson's procedural due process claim but reverse its judgment after trial on Derrickson's free speech claim and remand for further proceedings consistent with this opinion on that claim. The defendants' request for damages on appeal pursuant to Fed.R.App.P. 38 is denied.
 
 
 36
 Each party shall bear its own costs on this appeal.
 
 
 
 [1]
 The district court's memorandum opinion granting partial summary judgment in favor of defendants is reported at 537 F.Supp. 338, 340-344 (E.D.Mo.1980)
 
 
 [2]
 The Judgment and Order, and Memorandum Opinion of the district court is reported at 537 F.Supp. 338, 344-347 (E.D.Mo.1982)
 
 
 [3]
 Derrickson does not argue on appeal that the district court's grant of summary judgment on his free speech claim in favor of the twelve individual Board members who merely voted for nonretention, or who were not present, is erroneous. Therefore, our consideration of his first and fourteenth amendment free speech claim is limited to the actions of defendants Wentz, Neel, Spicer, and the Board
 
 
 [4]
 The record is unclear whether Spicer's March 13, 1978, report detailing his reasons for recommending nonretention of Derrickson was available to all Board members prior to the March 14, 1978, vote, but Spicer himself was present and available to answer questions at the Board meeting. The district court found that the Board acted on "the Spicer recommendation and * * * Derrickson's record." Derrickson v. Board of Education of St. Louis, 537 F.Supp. 338, 346 (E.D.Mo.1982). Even assuming that the Spicer report was not formally submitted to the entire Board by March 14, we are convinced that the Board had sufficient knowledge of Derrickson's performance at McKinley to make a proper decision concerning his nonretention. Whether such a decision was in fact properly made goes to the merits of Derrickson's free speech claim
 
 
 [5]
 Although the district court stated that the letter was delivered on March 15, 1978, Derrickson v. Board of Education of St. Louis, supra, 537 F.Supp. at 346, the record clearly reflects that it was dated March 15 but was not delivered until two days later
 
 
 [6]
 Because we hold that Derrickson had no protectable property interest by virtue of Missouri statutory law, we do not reach the question of what process would be due him had Missouri statutes created such an interest
 
 
 [7]
 In his brief, Derrickson further maintained that, with the extra semester in which to improve, he in effect would have satisfactorily completed his three-year probationary term and thus would have a legitimate claim to tenured employment by the Board. See Mo.Ann.Stat. Sec. 168.221(2) & (3) (Vernon Supp.1983) (teachers who satisfactorily complete their probationary terms become "permanent" teachers, who can be terminated only for cause or for compulsory retirement). Even if Derrickson was entitled to the extra semester, which we find that he was not, that extra semester would not necessarily vault him into instant tenured status: it apparently would merely extend his probationary period. See id. Sec. 168.221(1) (in any case, probationary period cannot be prolonged "beyond three years and six months from the date on which the teacher * * * entered the employ of the board of education")
 
 
 [8]
 If a probationary teacher does not receive a nonretention notice by April 15 of any year, that teacher "shall be deemed to have been appointed for the next school year." Id. Sec. 168.221(1)
 
 
 [9]
 We treat this question as purely one of state law, since, for the purposes of a procedural due process claim, property interests "are not created by the Constitution," Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and Derrickson does not claim that an expectancy of continued employment could arise out of a statutory construction of a Missouri statute which would be rejected in Missouri courts
 
 
 [10]
 The regulations were introduced at trial in summary form. They provided:
 During the three-year period of probation for teachers and principals there is a need to evaluate carefully their services. Present requirements provide for an annual evaluation which is due before March 15 each year.
 It is recommended that all teachers and principals on probation be evaluated at the middle of the first semester, end of the first semester and at the close of the school year. The approved evaluation form will be used for all evaluations and the usual procedures will be followed in communicating the evaluation to the teacher and the administrators involved.
 In addition, a special form will be submitted on March 15 each year indicating whether the probationary teacher or principal is to be retained for the following school year. Those who are not to be retained will be notified by the Superintendent of Schools before April 15 in order to comply with state law.
 During the third year of probation a committee appointed by the Director of Personnel shall be charged with carefully evaluating the probationary teacher or principal prior to achieving tenure.
 The evaluating committee will recommend to the Superintendent of Schools whether the teacher or principal is to be granted tenure status. Committees are to be appointed to evaluate during the last year of probation and are to report on March 15 prior to completion of the probationary period. This will allow sufficient time to notify those who are not to be retained before April 15. Notice of appointment to tenure status will be withheld until actual completion of the three year probationary period.
 Tenure teachers and principals will continue to be marked annually as scheduled by the Superintendent of Schools.
 Pl. Exh. 162 (minutes of September 11, 1973, Board meeting proposing policies for the future).
 
 
 [11]
 Unlike Derrickson's procedural due process claim, a property interest in continued employment is not a prerequisite to his substantive free speech claim under the first and fourteenth amendments. Perry v. Sindermann, 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972); Brockell v. Norton, 688 F.2d 588, 592 n. 7 (8th Cir.1982)