**ST. LOUIS TEACHERS UNION LOCAL 420, et al., Plaintiffs-Appellants,**

v.

**ST. LOUIS BOARD OF EDUCATION OF the CITY OF ST. LOUIS, et al., Defendants-Respondents.**

No. 46797.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 21, 1984.

Bruce S. Feldacker, St. Louis, for plaintiffs-appellants.

Kenneth C. Brostron, St. Louis, for defendants-respondents.

SMITH, Judge.

Plaintiffs, St. Louis Teachers Union and individuals representing classes of employees of the Board of Education of the City of St. Louis, appeal from a judgment in favor of the Board on plaintiffs' petition for "declaratory, injunctive, and other relief." We affirm.

Plaintiffs' petition has its genesis in a determination by the Board in April 1982 that insufficiency of funds and reduced student enrollment would require staff reductions in fiscal year 1982–1983. Pursuant to that determination the Board notified a large number of probationary teachers prior to April 15, 1982, that their contracts for the subsequent year would not be renewed, and stated in each notification that the reason for non-renewal was insufficient funds and reduced student population. In addition certain permanent teachers were placed on leave of absence as were some probationary teachers who had not been notified of non-renewal prior to April 15.

The Board also placed on leaves of absence a number of non-certificated employees. In determining which non-certificated employees would be placed on leave the Board utilized the following procedure. Employees with the greatest seniority in their positions were retained in those positions. Employees with less position seniority were given an opportunity to take jobs at a lower position for which they were qualified if they had greater seniority in equivalent or higher positions than employees holding those positions. As a result of

this "bumping" technique the employees placed on leave of absence were those with the least total employment seniority within the system of those qualified for a particular position. Seventeen employees who exercised "bumping" rights, and were retained at lower level jobs, had greater total employment seniority than employees who continued to hold the higher positions from which those seventeen had been removed. The seventeen had less position seniority, however, than those employees remaining in the higher positions. No challenge was raised about those employees placed on leaves of absence.

The Board also directed non-certificated employees who were to be placed on leave of absence effective July 1, 1982 to utilize their vacation time prior to that date. All but a few who could not be spared did so. Those few were compensated for their unused vacation time.

The plaintiffs sought several declarations of rights in their petition. The three before us on appeal are: (1) that probationary teachers whose contracts were not renewed prior to April 15 because of insufficient funds and reduction in student population were entitled to be placed on leaves of absence rather than be terminated; (2) that non-certificated employees were entitled to remain in their original jobs if they had greater total employment seniority with the Board than other employees with greater position seniority; and (3) that the Board improperly required non-certificated employees placed on leaves of absence to utilize accrued vacation prior to the effective date of their leaves of absence. These issues in turn.

■ It is basic in this state that the Board may refuse to renew the contract of a non-tenured teacher for any reason or no reason, as long as the non-renewal is not based on some ground impermissible under the Constitution. *Williams v. School District of Springfield R–12*, 447 S.W.2d 256 (Mo.1969) [1–5]; *Revelle v. Mehlville School District R–9*, 562 S.W.2d 175 (Mo. App.1978) [3, 4]; *White v. Scott County School District No. R–V*, 503 S.W.2d 35

(Mo.App.1973) [1–2]. There is no contention here that non-renewal was based on any ground not permissible constitutionally. Under the statute applicable to this school district the Board is required to notify the teacher prior to April 15 that the contract has not been renewed for the coming year, otherwise it is deemed to be renewed. Sec. 168.221.1, RSMo 1978. That time schedule was met.

The plaintiffs rely upon Sec. 168.221.5, RSMo 1978, which provides that "whenever it is necessary to decrease the number of teachers or principals . . . because of insufficient funds or a substantial decrease of pupil population . . . the board . . . may cause the necessary number of teachers or principals . . . beginning with those serving probationary periods, to be placed on leave of absence without pay, but only in the inverse order of their appointment." This section, plaintiffs claim, is a special statute dealing with reduction of personnel for budgetary reasons and overrides or supersedes the general provisions of Sec. 168.- 221.1 authorizing timely non-renewal. We disagree.

■ In interpreting the statute we are required to give each portion thereof equal weight and, if possible, harmonize the various sections. Only if the provisions are irreconcilably in conflict are we entitled to invoke the "special statute" rule of construction. *Harrison v. MFA Mutual Insurance Co.*, 607 S.W.2d 137 (Mo. banc 1980) [12–14]. Sub-paragraph 5 deals with lay-offs of teachers under contract. It authorizes leaves of absence for probationary teachers during the time they are under contract. *Frimel v. Humphrey*, 555 S.W.2d 350 (Mo.App.1977). It does not deal with non-renewal of the contracts of probationary teachers. Its application to this case is restricted to those probationary teachers who did not receive notice of nonrenewal prior to April 15, thereby causing their contracts to be renewed automatically for the following year. Those teachers were, pursuant to sub-paragraph 5, placed on leaves of absence for the 1982–3 year and that action is not challenged on this

appeal. The courts of this state have consistently recognized the distinction between termination of an existing contract to teach and non-renewal of that contract. *Williams v. School District of Springfield R–12, supra; Revelle v. Mehlville School District R–9, supra; White v. Scott County School District No. R–V, supra,* [1, 2]. Sub-paragraph 5 deals with leaves of absence for teachers under contract while subparagraph 1 deals with non-renewal of contracts. The two sections are compatible.

 Further the interpretation urged by the plaintiffs is not compatible with the concept of probation prior to the acquisition of tenure. The purpose of a probationary period is to enable the Board to assess the qualifications and ability of the teacher to determine whether it wants to keep the teacher permanently. Obviously, a teacher on leave of absence is not subject to assessment. To permit a teacher with as little as one day of teaching experience to achieve tenure because of a continuing leave of absence as a result of insufficient funds does not comport with the purposes of the teacher tenure statutes. We find no error in the trial court's ruling on the probationary teachers.

 The plaintiffs next challenge the procedures adopted for reducing the number of non-certificated employees and particularly the utilization of position seniority to determine which employees would move to lower positions. They rely upon Secs. 168.291 and 168.281 RSMo 1978. Specifically they contend that the former section requires that employees placed upon involuntary leaves of absence must be determined on the basis of seniority of employment by the district not by position seniority.[1] It is not necessary for us to decide whether "inverse order of their appointment" in the statute refers to total employment or position employment. Sec. 168.291

deals with placing employees on leave of absence, not with moving them up or down on the employment ladder. There is no contention here that any employee with greater total employment was placed on leave of absence in preference to an employee with lesser total employment.

 Similarly we find the "demotion" provisions of Sec. 168.281 inapplicable. That section specifically says: "Nothing herein shall *in any way restrict or limit* the powers of the board of education to make reductions in the number of employees because of insufficient funds or decrease in pupil enrollment or lack of work." (Emphasis supplied). Obviously, the restrictions on the Board's powers of demotion do not apply where, as here, those demotions arise from the need to reduce employees for budgetary reasons. We find no error in the trial court's findings and conclusions concerning repositioning of non-certificated employees.

The plaintiffs' final contention challenges the refusal of the trial court to award damages for the "loss" of vacation pay by employees who were "forced" to take their vacations prior to June 30, 1982. They base the attack upon an alleged policy of the Board that vacations accrued in one fiscal year are to be taken in the following year. Plaintiffs contend this establishes a contractual right to such timing. We find this position without merit for several reasons. The Board policy contained the following language:

"Employees are expected to use vacation earned prior to July 1 during the following year. Accruing vacation days will normally be taken after June 30; however, these days may be used in emergencies or for other compelling reasons with the approval of the supervising authority."

---

1. We note in passing that such a requirement if strictly applied would require the Board to place on leave of absence a nurse with less seniority than a janitor and presumably move the janitor to the nurse's position if it had more janitors than it required and fewer nurses. It would also mandate that an employee who had served as a clerk-typist II for 10 years would be reduced to clerk-typist I to allow a clerk-typist II with one day in that position but 10 years employment as a clerk-typist I to remain in the clerk-typist II position.

The request or requirement to utilize the vacation days prior to July 1 was made by the supervising authority and was for compelling reasons—an insufficiency of funds in the 1982–83 fiscal year which presented an abnormal situation. The record also demonstrates that the "policy" of taking vacation time after July 1 was not consistently enforced or applied. The stipulation of facts contains the following statement: "Most of these individuals had already utilized their vacation days during the 1981–82 school year and did not have any unused vacation days remaining." It is questionable that the so-called "policy" was any more than an expressed preference by the Board and we find no basis for concluding that it created a contractual right to vacation at a particular time. The Board fully recognized the contractual right of the employees to paid vacation days. *City of Webster Groves v. Institutional and Public Employees Union*, 524 S.W.2d 162 (Mo.App.1975) [12, 13].

Further, we are unable to find any evidence of damages. All employees received pay for days they did not work, i.e. vacation. At most, some employees may have lost an expectancy that they would receive their vacation pay for days not worked after July 1. That expectancy did not constitute a contractual right. Further, there is no evidence in the record that any employee with such an expectancy had it defeated. No employee testified that he would have taken his vacation after July 1 had it not been for the Board's request or requirement that he take it before. The burden of proof of damages was on the plaintiffs. They offered no evidence to establish damages.

Judgment affirmed.

GAERTNER, P.J., and NORWIN D. HOUSER, Special Judge, concur.